656 P.2d 1246

**UNITED LEASING, INC.,**
**Plaintiff/Appellant,**

v.

**COMMONWEALTH LAND TITLE AGENCY OF TUCSON, INC.; Aubrey Loyd; Commonwealth Land Title Insurance Company, a foreign corporation; and Berls, Inc., a foreign corporation, Defendants/Appellees.**

No. 2 CA–CIV 4115.

Court of Appeals of Arizona,
Division 2.

June 24, 1982.

Rehearing Denied Sept. 8, 1982.

Review Denied Oct. 13, 1982.

1. Western became Commonwealth Land Title

Stompoly & Even, P.C., by John G. Stompoly, Tucson, for plaintiff/appellant.

Foley, Clark & Nye, P.A. by Frank P. Willey, Phoenix, for defendants/appellees.

## OPINION

BIRDSALL, Judge.

This is an appeal from the decision of the trial court, sitting without a jury, that the plaintiff-appellant, United Leasing, Inc., had not effectively accepted a counter-offer made by the defendant, Aubrey C. Loyd, for the sale of Western Title Company[1] in Tucson. We reverse.

The appellant states only two claims on appeal:

1) That the trial court erred in denying its motion to amend the judgment to include certain findings and conclusions contained in previous minute entries, and

2) That the conclusion that the delivery of its acceptance was legally insufficient was error.

### The Findings and Conclusions

Neither party requested findings of fact and conclusions of law pursuant to Rule 52 of the Rules of Civil Procedure, 16 A.R.S. However, the trial court ruled on the case, which it had under advisement, in a nine page minute entry containing detailed findings and conclusions. All of these were favorable to the appellant except the final legal conclusion that the appellant's delivery of the written acceptance of the counter-offer was legally ineffective.

The trial court properly denied the appellant's motion to include the findings in the judgment. *Filer v. Maricopa County,* 68 Ariz. 11, 198 P.2d 131 (1948). The only authority cited by the appellant to support this argument is Rule 52(b), which provides, in part:

> "Amendment. Upon motion of a party filed not later than 15 days after entry of judgment the court may amend its find-

Co. of Tucson.

ings or make additional findings and may amend the judgment accordingly."

This rule refers to findings and conclusions requested and made pursuant to Rule 52(a). It is inapplicable in the instant case.

■ Our decision on this issue does not detract from the appellant's case. We suppose the reason it wanted the judgment amended was to give additional weight to the findings. Findings requested and made pursuant to 52(a) "shall not be set aside unless clearly erroneous." Rule 52(a). This weight would not attach to these findings even if the judgment had been amended to include them. This does not mean that the findings are to be ignored. Where sua sponte findings are based on conflicting evidence they will not be disturbed on appeal if there is reasonable evidence to support them. *Universal Investment Co. v. Sahara Motor Inn, Inc.,* 127 Ariz. 213, 619 P.2d 485 (App.1980). *See Also Neal v. Neal,* 116 Ariz. 590, 570 P.2d 758 (1977); *Trollope v. Koerner,* 21 Ariz.App. 43, 515 P.2d 340 (1973).

### Acceptance of Offer

■ In order to discuss this critical issue upon which the entire case turns we must review the facts. Since we find evidentiary support for all the findings made by the trial court our review is consistent with those findings. Furthermore, since these facts support the legal conclusions of the trial court except upon the issue raised in this appeal, we also use those conclusions in detailing this background information.

In 1976 Berl's Enterprises, Inc., a Kansas corporation then owned by the appellee Aubrey Loyd and a Mr. Eldridge,[2] purchased Western Title Co., an Arizona corporation, from Donald Denton. Denton was a real estate broker in Tucson, and Western did business in Tucson, where its office was located. Denton was the principal owner of Western. Western issued title insurance for Commonwealth Land Title Insurance Co., its underwriter. Berl's continued the business of Western in Tucson.

In December, 1976, Harold Cole, a Tucson attorney and a principal in appellant United Leasing, Inc., asked Denton if Western was for sale and was told that it was not. Again in May, 1977, Cole inquired of Denton, who in turn contacted Berl's. Berl's was actively attempting to sell Western. To that end Bill Moore, who was employed by Loyd in October, 1977, to investigate the possible acquisition of some public warehouses in Tucson, and was therefore personally in the Tucson area, became active in various negotiations concerning the sale of Western. Loyd's office was in Kansas City and no evidence suggests that he participated in the daily management of the title company. The trial court found that Moore was Berl's (Loyd's) agent for the purpose of selling Western, and abundant evidence supports that conclusion. Negotiations were conducted between Denton (for Cole) and Moore (for Loyd). The trial court also found that Denton was Cole's agent, and that conclusion is amply supported by the record.

The negotiations between Denton and Moore during October, November and December of 1977 were by mail, except for two personal meetings. Letters containing offers from Cole were written by Denton and mailed to Moore at the Kansas City address of Creative Properties, a corporation owned by Loyd. The principals never met, but Denton did meet with Loyd in Tucson on either one or two occasions on January 17 and/or 18, 1978.

By letter dated December 23, 1977, Moore wrote Denton acknowledging a copy of a letter-offer from Cole, dated December 19. The letter of the 23rd contained a counter-offer from Loyd. The letter, on Creative Properties stationery, ended with the sentence, "The owners are prepared to proceed at once and will therefore await your reply."

On January 17 or 18, Denton met with Loyd in Tucson, giving him a copy of the counter-offer from Moore, and although Loyd was apparently dissatisfied with the counteroffer, was told by Loyd that he

2. Loyd acquired the Eldridge interest before these events transpired.

would stand by the offer. Although Loyd denies this, the trial court believed Denton's version. Since Moore was authorized to make the offer, and since there is no evidence it was ever withdrawn, this finding is not necessary to our disposition of the case.

On January 20, 1978, Denton advised Cole that the counter-offer of December 23 was "take it or leave it," and Cole decided to accept the offer. Cole then prepared two identical letters of acceptance, one addressed to Denton and the other to Loyd at Western Title in Tucson. The letter to Loyd read as follows:

"On behalf of my clients, United Leasing, Inc., an Arizona corporation, we are in possession of the counter-offer presented by Mr. Bill Moore for and on behalf of the owners of Western Title, said counter-offer dated December 23, 1977, and a copy of which is attached hereto.

On behalf of my clients, I wish to advise you and have you inform the owners of Western Title that their counter-offer is accepted, subject to verification of the books and records of Western Title, as represented by Mr. Bill Moore and the owners.

I would appreciate your asking Mr. Eldridge and/or Mr. Moore when we could sit down and finalize the necessary documents and set up the approximate times for the examination of the books and records."

Denton then called Western Title in Tucson asking for Loyd. He was told Loyd was in a meeting and could not talk at that time. Denton then took the letter in a sealed envelope to the Western Title office. There he asked to see Mr. Loyd, who was in a meeting. He tried to get him out of the meeting but the receptionist checked, came back and said Loyd could not be disturbed. Beth Munson, the receptionist, who was also the employee who received the mail, was not called to testify in the trial.

Denton then printed and signed a note on the envelope which read,

"Mr. Aubrey Loyd—I was instructed to deliver this to you on behalf of my clients. It is an acceptance."

He left the sealed envelope with Munson, who assured him it would be given to Loyd as soon as he got out of the meeting. He then left Western, and later that day the unopened envelope was returned to him at his office. It bore the additional printed notation, "Refused unopened by Mr. Loyd."

This action for damages for breach of contract followed, after Loyd refused to sell to the appellant and sold Western to another buyer. Although Loyd testified, no one asked him if he was present that day at Western. He did testify that he never saw the envelope and did not know about the notation saying he had refused the acceptance letter.

The detailed minute entry containing the trial court's sua sponte findings and conclusions contains the following:

"The Defendant argues that there was no acceptance of the purported offer because the acceptance was ineffective due to the fact that it was delivered to a person having no authority to receive it. . . . There is no evidence in this case that the receptionist was such a person who would be authorized to be the depository of an acceptance to this contract. It would have been very simple for Mr. Cole or Mr. Denton in this case, to have deposited Plaintiff's Exhibit 40–A in the United States mail, addressed to Mr. Moore or to the offeror in Kansas City and there would be no argument that this would not have been a chanel (sic) of communication to accept the purported offer to sell contained in the letter of December 23, 1977. But this was not done. And here the Court believes the Plaintiff's case fails. . . . There is no proof that Mr. Loyd ever received or even knew of the existance (sic) of Plaintiff's Exhibit 40–A. . . . It is clear from the record that after the acceptance was delivered, and by innuendo the Court is supposed to believe that Mr. Loyd knew of the delivery. Nothing happened, there was no communication from Mr. Loyd disaffirming the letter of December 23, and those facts would indicate to this Court that Mr. Loyd knew nothing of the attempt

upon the part of Mr. Denton to deliver Plaintiff's 40–A to him through the receptionist at the title company office in Tucson, Arizona; therefore,

IT IS THE ORDER OF THE COURT that the defendant will prevail on the Plaintiff's Complaint, . . ."

From these statements it appears that the trial court reached the legal conclusion that the delivery of the acceptance was legally insufficient and therefore no contract was made. We disagree with this conclusion.

The counter-offer of December 23rd did not require that an acceptance be made in any particular manner or by any specific mode of communication. "If no method is either suggested or prescribed, the acceptance must be in a manner that is reasonable, in consideration of the subject matter of the offer and the common usages of men." 1 Corbin on Contracts, 375 (1963); *See Also* 1 Williston on Contracts § 83 (3rd Ed.1957). Surely the method of acceptance employed by the appellant was reasonable under these circumstances. Denton attempted to hand deliver the written acceptance. This attempt was thwarted only because Loyd could not be disturbed. At that point he left the acceptance with the very person who had presumably spoken with Loyd and who would presumably deliver it to him as soon as he was out of his meeting. It would place form over substance to expect or require Denton to take the letter with him, place it in a different envelope, address it to Loyd in Kansas City, and mail it. Yet that is essentially what the trial court concluded. We cannot agree.

The trial court also seems to place some legal significance on the fact that no evidence shows Loyd ever received the acceptance. Unless expressly required by the offer, actual receipt of an acceptance is not necessary to the formation of a contract if the method of communication is reasonable under the circumstances. *See* Williston § 88. No offer could be accepted if actual receipt was required and the offeror refused to accept delivery of a written acceptance. The evidence strongly suggests that is what occurred.

The Restatement of Contracts 2d § 56 provides:

"Acceptance by Promise; Necessity of Notification to Offeror.

Except as stated in § 69 or where the offer manifests a contrary intention, it is essential to an acceptance by promise either that the offeree exercise reasonable diligence to notify the offeror of acceptance or that the offeror receive the acceptance seasonably."

The exceptions in § 69 have to do with acceptance by silence or exercise of dominion and are inapplicable here. Applying § 56 here, it is evident that the appellant exercised reasonable diligence to notify the offeror of the acceptance. It is difficult to imagine any more diligent conduct.

Restatement § 65 concerning the medium of acceptance, hand delivery to an office of the offeror, is also applicable here. That section reads:

"Reasonableness of Medium of Acceptance.

Unless circumstances known to the offeree indicate otherwise, a medium of acceptance is reasonable if it is the one used by the offeror or one customary in similar transactions at the time and place the offer is received."

No evidence shows any other circumstances known to the appellant which would detract from the reasonableness of the medium employed by Cole's agent. It also seems to us that the trial court could not conclude that the medium of hand delivery would not be customary in this kind of transaction. *See Also* A.R.S. § 44–2313; *Empire Machinery Co. v. Litton Business Tel. Systems,* 115 Ariz. 568, 566 P.2d 1044 (App.1977). The comment to § 65 notes that other relevant circumstances to be considered in determining "reasonableness" are the speed and reliability of the medium. No medium would be faster than that employed by Denton and there was apparently no reason to question the reliability. The comment also suggests the prior course of dealing between the parties as a relevant consideration. Al-

though the prior offers and counteroffers here were all by mail there were prior meetings between the two agents and Denton and the appellee, which suggests that it was reasonable to deliver the acceptance personally to the appellee.

The cases cited to us either support our conclusions or are inapposite. *Gerber v. Equitable Life Assurance Society of the United States,* 1 Ill.App.2d 272, 117 N.E.2d 393 (1954), held that an insured's acceptance of a continuing offer in the insurance policy to pay the cash surrender value of a policy in default was effectively made when received by an employee with authority to receive communications for and on behalf of the company. The opinion holds it was immaterial whether the employee was authorized to "approve" the acceptance.

The opinion follows Section 69 of the Restatement: "A written acceptance is to be considered 'received' when the writing comes into the possession of the person addressed or some person authorized by him to receive it for him or when it is deposited in some place which he has authorized as the place for this or similar communications to be deposited for him." The opinion notes the comment to Section 69 that "a written communication may be received though it is not read or though it does not reach the hands of the person to whom it is addressed." *Morello v. Growers Grape Products Assn.,* 82 Cal.App.2d 365, 186 P.2d 463 (1947) holds that a contract is complete when the letter of acceptance is posted, in the absence of any provision in the offer requiring that the letter of acceptance be received.

On the other hand, two other cases turn on whether notice to an agent constitutes notice to the principal and are inapposite. In *Van Dyke's Food Store v. Independent Coal & Coke Co.,* 84 Utah 95, 34 P.2d 706 (1934), one Hardy sold and delivered to the defendant certain mine ties. Prior to the delivery it was claimed he assigned the money to be paid to the plaintiff and the defendant failed to honor this assignment. If there was an assignment the only notice given defendant was to an employee whose only duty was to receive and disburse materials. This employee had nothing to do with the payments to Hardy for the ties. He was without authority to accept an assignment for his employer.

In *Dimmitt Elevator Co. v. Carter,* 70 S.W.2d 615 (Tex.1934), it was held that notice to a bookkeeper that a party had an interest in wheat sold to the elevator was not notice to the elevator company. It was not shown that the bookkeeper had authority to buy or pay for the wheat.

The trial court's conclusion that the appellant had not accepted the December 23 offer was erroneous. We remand for a determination of damages.

Judgment reversed and remanded.

HOWARD, C.J., and HATHAWAY, J., concur.