932 P.2d 1367

**CRYSTAL POINT JOINT VENTURE, Plaintiff–Appellee, Cross–Appellant,**

v.

**ARIZONA DEPARTMENT OF REVENUE and Maricopa County, Defendants–Appellants, Cross–Appellees.**

**No. 1 CA–TX 95–0013.**

Court of Appeals of Arizona, Division 1, Department T.

Feb. 25, 1997.

Fennemore Craig, P.C. by Paul J. Mooney, Kendis K. Muscheid, Phoenix, for Plaintiff–Appellee, Cross-Appellant.

Grant Woods, Attorney General by Michael F. Kempner, Assistant Attorney General, Phoenix, for Defendant–Appellant, Cross-Appellee State of Arizona.

Trompeter, Schiffman, Petrovits, Friedman & Hulse, L.L.P. by Jack B. Schiffman, Phoenix, for Defendant–Appellant, Cross-Appellee Maricopa County.

## OPINION

WEISBERG, Judge.

Maricopa County (the county) appeals and Crystal Point Joint Venture (the taxpayer) cross-appeals the judgment entered by the tax court. We affirm on both the appeal and the cross-appeal.

## FACTUAL AND PROCEDURAL HISTORY

The taxpayer developed an eighteen-story, luxury condominium building in Phoenix which consisted of 69 units, each with separate tax parcel numbers. As of January 1, 1992, the taxpayer still owned 37 units. In mid–1992, studio units that had been associated with six of the condominium units as maid's quarters became separately parcelled, and three were sold. As of January 1, 1993, the taxpayer owned the remaining three studio units and all 37 units from the preceding year.

The Maricopa County Assessor assigned separate full cash values to each of the units for tax year 1992. The taxpayer challenged these assessments before the Maricopa County Board of Equalization (BOE) and then the State Board of Tax Appeals (BOTA). *See generally* Ariz.Rev.Stat. Ann. (A.R.S.) §§ 42–221, 42–241.01, 42–245. The sum of the separate full cash values for 1992 that BOE fixed and BOTA upheld was $11,801,888.

Although the Assessor revalued the units for 1993, the taxpayer also challenged the revaluations before BOE. The sum of the separate full cash values for 1993 fixed by BOE was $6,831,256.

The taxpayer brought actions in the tax court challenging the BOTA valuations for 1992 and the BOE valuations for 1993. *See generally* A.R.S. § 42–177. The actions were consolidated. After a three-day bench trial, the tax court found that 1) the taxpayer had failed to produce sufficient evidence to show that the valuations were too high, and 2) although the county had demonstrated that the valuations were too low, it had failed to provide sufficient evidence from which the court could determine the actual full cash values. *See* A.R.S. § 42–178(B); *Department of Revenue v. Transamerica Title Ins. Co.*, 117 Ariz. 26, 28, 570 P.2d 797, 799 (App. 1977). The court entered formal judgment affirming the valuations.

The county now appeals and the taxpayer cross-appeals raising the following issues:

1. Did the tax court err in finding that the taxpayer had not met its burden of proving that the values were excessive and, if so, should the values be reduced to those supported by the taxpayer's expert witness?

2. After having determined that the county had shown that the values were insufficient, did the tax court err in failing to set the new values supported by the county's expert?

3. Should condominium units be valued as separate parcels of real property and, if so, did the tax court err in setting a single

aggregate full cash value for the taxpayer's units for each year?

4. Did the tax court err in entering a judgment that did not include the stipulated legal classifications of each unit?

5. Did the tax court err in denying the county's request for expert witness fees and double costs under Rule 68, Arizona Rules of Civil Procedure?

We have jurisdiction pursuant to A.R.S. section 12–2101(B). This appeal is assigned to Department T of this court pursuant to A.R.S. sections 12–120.04(G) and –170(C).

## DISCUSSION

### I.

■ We first address the taxpayer's argument on cross-appeal. The taxpayer contends that the tax court erred in determining that 1) it had failed to overcome the statutory presumption of correctness for the BOTA and BOE valuations, and 2) it had not established the correct values. *See* A.R.S. §§ 42–178(B)–(C).

In support of its argument, the taxpayer points to the testimony of its expert, Ralph Brekan, who applied the discounted cash flow method to appraise the units. The taxpayer argues that, since the county agreed that this appraisal method is a "standard appraisal method[ ] and technique[ ]" within the meaning of A.R.S. section 42–141(A)(5),[1] and since there was no competent evidence to the contrary, the tax court was required to adopt the units' values as opined by Brekan. We, however, disagree.

Brekan explained the discounted cash flow appraisal method in his written report:

> *This technique estimates the price an investor/developer can afford to pay for all of the improved units after considering cost of sales, carrying costs, absorption periods, and profit.* The retail prices of the respective units are estimated based upon the sales of similar unit types, including sales in the subject project, from which all

holding costs are deducted, including marketing costs, and entrepreneurial profit to arrive at the net sales proceeds. The periodic net sales proceeds are then discounted to present value at an appropriate yield rate over the estimated period required for project development and market absorption. *The result is an indication of the bulk market value to one owner or buyer.*

(Emphasis added). He testified consistently at trial that the discounted cash flow method produced an estimate of market value representing what *one* willing buyer would have paid for *all* the units on January 1, 1992, and January 1, 1993. Brekan then assigned individual values to each of the units by apportioning the project's discounted cash flow valuation among the units based upon the contributory value of each unit to the whole. He also acknowledged that, if he were determining the fair market value of each individual unit for residential use, he would do so by a different method using sales comparison data. Brekan thus made it clear that he based his market value opinions on the assumption that the condominium units constituted a *single* piece of real estate that was to be valued as such.

The taxpayer argues that Brekan's discounted cash flow approach constitutes a "standard appraisal method[ ] and technique[ ]" within A.R.S. section 42–141(A)(5). It further contends that A.R.S. sections 42–221(E) and –229, together with DOR's *Assessment Procedures Manual* and *Land Manual*, expressly contemplate appraising groups of commonly owned tax parcels as a single unit.

The county responds that each unit must be valued independently to satisfy both A.R.S. section 33–1204(B) and the Arizona constitutional requirement of uniformity. *See* Ariz. Const. art. IX, § 1 ("All taxes shall be uniform upon the same class of property within the territorial limits of the authority levying the tax...."). We agree

---

1. A.R.S. section 42–141(A)(5) provides in part:
   The department shall ... [a]dopt standard appraisal methods and techniques for use by the department and county assessors in determining the valuation of property.... In the standard appraisal methods and techniques adopted, current usage shall be included in the formula for reaching a determination of full cash value.

with the county, although we do so based upon the statute alone.

To begin, the taxpayer cannot rely upon A.R.S. section 42–221(E) [2] for the proposition that multiple tax parcels owned by a single taxpayer may be valued either individually or collectively, at the taxpayer's option. The statute merely permits property owners, in limited circumstances, to include more than one parcel in a petition to the assessor for changes in classification or valuation.

The taxpayer also relies mistakenly on A.R.S. section 42–229, which provides: "If two or more contiguous lots, tracts of land or patented mines are owned by the same person, they may be jointly assessed and one valuation fixed for the whole." The taxpayer fails to cite any authority for its implicit premise that a condominium unit is the legal equivalent of a "lot," a "tract of land," or a "patented mine" and we reject that interpretation. *See* A.R.S. § 1–213 ("Words and phrases shall be construed according to the common and approved use of the language."); *Deatherage v. Deatherage*, 140 Ariz. 317, 320, 681 P.2d 469, 472 (App.1984) (statutory lan-

guage to be given its natural and obvious meaning.).

■ More importantly, however, we find another statute to be both directly on point and dispositive. A.R.S. section 33–1204 specifically addresses condominiums and provides in part:

A. *If there is a unit owner* [3] other than a declarant,[4] *each unit* that has been created, together with its interest in the common elements, *constitutes for all purposes a separate parcel of real estate.*

B. *Except as provided in subsection C, if there is a unit owner other than a declarant, each unit shall be separately taxed and assessed,* and no separate tax or assessment may be rendered against any common elements.

. . . .

D. *If there is no unit owner other than a declarant, the real estate comprising the condominium shall be taxed and assessed as a single parcel.*

(Emphasis added). Assessing property for *ad valorem* taxation necessarily includes valuing the property. *E.C. Garcia & Co. v.*

**2.** A.R.S. section 42–221(E) provides in part:

E. Any owner of property which in his opinion has been valued too high or otherwise improperly valued or listed on the role by the assessor may file a petition with the assessor on a form prescribed by the department. The petition shall set forth in writing the owner's opinion of the full cash value of the property and substantial information which justifies that opinion of value for the assessor to consider for purposes of basing a change in classification or reduction or correction of the valuation. Petitions may include more than one parcel of property if they are part of the same economic unit according to the department of revenue guidelines or if they are owned by the same owner, they have the same use, are appealed on the same basis and are located in the same geographic area, as determined pursuant to department of revenue guidelines and are on a form prescribed by the department. . . . For purposes of this section, the owner provides substantial information to justify the opinion of value by stating the method or methods of valuation on which the opinion is based and:

    1. Under the income approach, including the information required in subsection H of this section.

    2. Under the market approach, including the full cash value of at least one comparable

property in the same geographic area or the sale of the subject property.

    3. Under the cost approach, including the cost to build or rebuild the property plus the land value.

**3.** A.R.S. section 33–1202 provides, in relevant part:

22. "Unit" means a portion of the condominium designated for separate ownership or occupancy.

23. "Unit owner" means a declarant or other person who owns a unit. . . .

**4.** A.R.S. section 33–1202(13) defines "declaration" as "any instruments, however denominated, that creates a condominium and any amendments to those instruments." Subsection (12) defines "declarant" as "any person or group of persons who reserves, is granted or succeeds to any special declarant right." Subsection (10) provides:

"Condominium" means real estate, portions of which are designated for separate ownership and the remainder of which is designated for common ownership solely by the owners of the separate portions. Real estate is not a condominium unless the undivided interests in the common elements are vested in the unit owners.

*Arizona State Dep't of Revenue*, 178 Ariz. 510, 517, 875 P.2d 169, 176 (App.1993); *Fry v. Mayor of Sierra Vista*, 11 Ariz.App. 490, 495, 466 P.2d 41, 46 (1970). Accordingly, under A.R.S. sections 33–1204(B) and (D), if even one unit in the complex is owned by someone other than the declarant, every unit must be treated as a separate parcel of real estate and separately valued, assessed, and taxed. The only situation in which the units that comprise the complex are to be valued, assessed, and taxed as a single parcel is when the declarant owns every unit within the condominium project.

The taxpayer nevertheless argues that the units may be valued first as a whole, with the value then being apportioned among the individual parcels. It contends that A.R.S. section 33–1204 does not preclude the "valuation parameters" of A.R.S. Title 42 from being applied to condominium units, and concludes that A.R.S. sections 42–221(E) and –229 therefore allow aggregate valuation for all owners of multiple condominium units. We disagree.

■ Although A.R.S. section 33–1204 does not specify that the valuation provisions of Title 42 are inapplicable to condominium units, it is a specific statute that is on point, and therefore must prevail over other more general statutes. *See Mercy Healthcare Ariz., Inc. v. Arizona Health Care Cost Containment Sys.*, 181 Ariz. 95, 100, 887 P.2d 625, 630 (App.1994); *Drexel Heights Fire Dist. v. City of Tucson*, 175 Ariz. 488, 489, 858 P.2d 321, 322 (App.1993). Accordingly, despite being a valid appraisal method for other purposes, the discounted cash flow method is legally incompetent[5] when applied here.

■ Moreover, the taxpayer, in effect, asks us to recognize that each unit is adversely impacted by the glutting effect of having all of its units on the market at the same time. Our supreme court, however, has made it clear that individual circumstances which adversely affect the marketability of real estate cannot be controlling for *ad valorem* property tax purposes. *See Recreation Ctrs. of Sun City, Inc. v. Maricopa County*, 162 Ariz. 281, 285, 782 P.2d 1174, 1178 (1989).

In *Rec. Centers*, the taxpayer contended that its property was valueless due to the adverse effect of deed restrictions on its marketability. The supreme court rejected that argument, stating:

> Rec Centers insists that the assessor must consider the "realities of the market place" and may not "create a mythical sale in accordance with the definition of market value."
>
> We believe this argument confuses the concept of marketability with that of value. The statutes do not impose a tax on "market value" but on "full cash value." They equate full cash value with market value (*see* A.R.S. § 42–227(A)), but provide that any of the standard appraisal methods may be used in the determination, thus contemplating that where market value is not the best indicator of value, other approaches, such as a cost or income approach, may be used to fix value. *See* A.R.S. § 42–201(4). Thus, although a particular restriction may destroy marketability, the property may have value in use to the owner and should therefore be assessed and taxed. Arizona has recognized this principle. *See [County of Maricopa v.] Sperry Rand [Corp.]*, 112 Ariz. [579,] 581, 544 P.2d [1094,] 1096 [1976] (special purpose building with little or no value on the market but having great value in use to the owner should not be assessed by use of the market technique

---

5. "Evidence is competent for the purposes of rebutting the statutory presumption of and showing that the Department's valuation was excessive when it is derived by standard appraisal methods and techniques *which are shown to be appropriate under the particular circumstances involved.*" *Inspiration Consol. Copper Co. v. Arizona Dep't of Revenue*, 147 Ariz. 216, 223, 709 P.2d 573, 580 (App.1985) (emphasis added); *accord Golder v. Department of Revenue*, 123 Ariz. 260, 263, 599 P.2d 216, 219 (1979). A standard

appraisal method may be inappropriate under the circumstances, and evidence tendered pursuant to its use incompetent, where the method is legally inapposite as applied. *See Graham County v. Graham County Elec. Coop.*, 109 Ariz. 468, 471, 512 P.2d 11, 14 (1973) (use of standard income capitalization method of appraisal was "fundamentally wrong" where taxpayer was non-profit utility that set rates intending not to make profit).

but, instead, by a cost less depreciation method); *Graham County,* 109 Ariz. at 471, 512 P.2d at 14 (use of income approach improper, because taxpayer was nonprofit electric cooperative).

*Rec. Centers,* 162 Ariz. at 289, 782 P.2d at 1182 (citation omitted); *cf. In re America W. Airlines, Inc.,* 179 Ariz. 528, 535, 880 P.2d 1074, 1081 (1994) (classification of property turns on characteristics, use, utility, or productivity of property itself, not size, wealth, or location of owner).

■ In this case, the taxpayer's situation is the mirror image of that presented in *Rec. Centers,* but the same principle applies: a parcel's intrinsic value for its actual or intended use, and not its owner's ability or inability to liquidate it, is the focus when determining full cash value for property tax purposes.

■ Finally, the taxpayer asserts that the county admitted in the joint pretrial statement that the 1992 BOTA valuation was excessive. But, even accepting *arguendo* that that was so, only the valuation's presumption of correctness would be overcome. The admission, alone, could not provide competent evidence to establish a different full cash value.

Accordingly, we uphold the tax court's rejection of Brekan's appraisal and its conclusion that the taxpayer failed to introduce sufficient evidence to either overcome the statutory presumption of correctness or to establish different full cash values for the units.

## II.

We next consider the tax court's finding that the county had shown that the BOE and BOTA valuations were too low, but failed to prove the proper valuations.

The tax court's initial ruling after trial stated:

The County has introduced enough evidence for the Court to conclude that the value set by the Board is too low. But the County has failed to convince the Court that the proper value should be the sum [in] Mr. Duncan's [the county's expert] report. . . . Mr. Duncan, during testimony, and counsel for the County, at argument, said the figure should be less than the [sum in the] report but neither presented argument as to what that figure should be. The figure set by the State Board cannot be approved because the presumption has been overcome. Therefore, the Court will have to set a hearing to hear evidence to determine where, below the [sum in] Mr. Duncan's report, the value for the tax years 1992 and 1993 should be set.

But after a later hearing, the tax court modified its stance:

Because of the wording of A.R.S. § 42–178(C), "If the court finds that the valuation is excessive or insufficient, the court *shall* find the full cash value of the property," . . . the Court felt that, having determined that the valuation was insufficient, it was required to proceed to a finding of value. Since it also found that the County had tried that but failed, it felt that it must ask for more evidence. The Court feels now that that is wrong. To give the County the opportunity to do what it had initially failed to do does not seem fair or equitable. For one thing, allowing a party to reopen its case for a deficiency a court sees might allow a case to go on indefinitely. That is not good.

This Court does not now believe that the "shall" in the statute requires the Court to go farther once both parties have failed to carry their burdens.

Therefore, IT IS ORDERED affirming the valuation set by the State Board [sic [6]].

■ The county now contends that, pursuant to A.R.S. section 42–178(C), the tax court's finding that the county had overcome the presumption of correctness required it to assign a higher full cash value for each unit. The taxpayer responds that the county's appraisal evidence was deficient in several particulars and did not qualify as substantial

---

**6.** The tax court later corrected this statement in a minute entry order, noting that it had meant to refer to BOTA for 1992 and BOE for 1993.

competent evidence for fixing higher valuations. In reply, the county points out that both Brekan and Duncan arrived at estimated market values that were higher than those set by the administrative boards, and that this combination constituted substantial, competent evidence which the tax court could not ignore. We, however, disagree with the county.

In *Graham County v. Graham County Elec. Coop.,* 109 Ariz. 468, 512 P.2d 11 (1973), a utility appealed property valuations set by the state taxing authority. The utility successfully attacked the appraisal method used by the state in order to show that the valuations were excessive. Then, in order to establish new values, the utility presented an appraisal premised upon a method different from that used by the state. The trial court found that the valuations were too high and lowered them accordingly.

On review, the Arizona Supreme Court held that, in order to overturn a property valuation, the trial court must first find that the set value is excessive and then, if supported by substantial competent evidence, set a proper value. *Id.* at 470, 512 P.2d at 13. While the supreme court agreed that the state's appraisal method was "fundamentally wrong," it disagreed that the new valuations were supported by substantial competent evidence. *Id.* at 470–71, 512 P.2d at 13–14. It therefore held that the utility had failed to establish appropriate values and affirmed the state's valuations. *Id.* at 471, 512 P.2d at 14.

In the instant case, the tax court properly followed the supreme court's guidance in *Graham County.* Even though the BOTA and BOE valuations were deficient, they were affirmed because the county had not presented substantial competent evidence of correct values.

We acknowledge that A.R.S. section 42–178(C) provides that the court "shall" find the property's full cash value once it has found that the administrative valuation was either insufficient or excessive. But under the county's interpretation, the tax court would be required to set speculative full cash values since the only other evidence presented was not competent. Accordingly, we construe A.R.S. section 42–178(C) to require a

finding of a new full cash value only when the proponent has presented substantial competent evidence of a proper valuation. *See Graham County,* 109 Ariz. at 470–71, 512 P.2d at 13–14.

■ The county next argues that both Brekan and Duncan presented evidence of current market values, as determined by the sales comparison method, and that their combined testimony constituted substantial competent evidence of full cash value. Again, we disagree.

Brekan testified that he was never asked to value any of the taxpayer's individual units. Furthermore, we are unable to locate anything in the record indicating that he may have done so. We have also searched the record, in vain, for any indication that the county, even once, cited Brekan's evidence to the tax court in support of its individual valuations.

In any event, Brekan's appraisal report and testimony are inconsistent with the county's position. Brekan's report stated:

> Three approaches may be used; however, the Sales Comparison Approach is not considered applicable and was therefore not used in this appraisal. The Sales Comparison Approach is not used as an overall indicator of value for all 37 units due to a lack of comparable bulk sales of similar condominium units.
>
> . . . .
>
> The Sales Comparison Approach was applied as a technique within the Income Capitalization Approach to support the estimate of average retail pricing for individual units, to be used in the discounted cash flow analysis.

Brekan never opined that the sales comparison approach, as applied in the discounted cash flow method, may function independently as a "standard appraisal method[ ][or] technique[ ]" within the meaning of A.R.S. section 42–141(A)(5). Accordingly, there is no basis on which to hold that the transitional "retail price estimates" used by Brekan in his discounted cash flow analysis constituted competent evidence of the units' full cash values.

■ We also find no error in the tax court's refusal to accept Duncan's appraisal. A trier of fact may disregard expert opinion evidence when it is equivocal; when it is contradicted by other expert testimony; when its factual predicates are disputed; or when common experience or conflicting lay testimony provide a basis for disbelief. Morris K. Udall et al., *Law of Evidence* § 25, at 43–44 (3d ed.1991). Our review of the record reveals numerous grounds on which the tax court would have been within its discretion in disregarding Duncan's opinion.

The most salient grounds are those enumerated by the tax court itself. During his testimony, Duncan acknowledged that he had failed to consider several relevant factors and that his actual valuation figures were overstated. For example, Duncan's appraisal did not take into account that the units were unfinished and would require further work before they could be sold. He also failed to consider that several of his comparable sales were overstated because substantial decorator allowances were not appropriately treated as reductions in the actual price paid. Additionally, the tax court understandably questioned Duncan's use of 1994 sales as valid comparables, especially since Duncan included them only "[t]o have a larger data base to work from." Finally, the county never attempted to amend or correct Duncan's inadequately supported conclusions. Accordingly, the tax court was not required to accept his opinion.

Because both sides failed to prove their claims for adjustments to the BOTA and BOE valuations for 1992 and 1993, the tax court correctly denied all relief, thereby leaving the administrative valuations undisturbed.

### III.

■ We next consider whether the tax court erred in failing to value the units individually, rather than as parts of a unitary whole. Although BOTA and BOE had fixed separate valuations for each of the taxpayer's units, the tax court entered a judgment that described the full cash value for each year as a lump sum of the separate valuations. The county now urges that the lump sum valuation violated the principle of mandatory separate value required by A.R.S. section 33–1204.

The county, however, neither raised that objection to the taxpayer's form of judgment, nor proposed its own form of judgment setting forth separate valuations. Accordingly, this argument has been waived and we will not consider it. *See Sahf v. Lake Havasu City Ass'n for the Retarded*, 150 Ariz. 50, 53, 721 P.2d 1177, 1180 (App.1986).

### IV.

■ The county next complains that the tax court abused its discretion in entering a judgment that did not include the property classifications to which the parties had stipulated in their joint pretrial statement. The taxpayer responds by judicially admitting, *see* IX John H. Wigmore, *Evidence* § 2588 (1981), that it

does not retreat from that stipulation and does not dispute that the classifications for the parcels in the appeal should be those set forth in the Joint Pretrial Statement. However, because the parties stipulated to those classifications, Crystal Point does not believe that it was necessary for the Court to either make findings of fact relating to those classifications or include them in the Judgment. Crystal Point does not believe the Court intended to relieve the parties of the burdens of their stipulation by not including them in the Judgment. Thus, the Court did not err by failing to include the stipulated classifications in the Judgment.

We first note that the county has not argued that the resolution of the contested issues in this case rests in any way upon the classifications in the stipulation. We further note that most of the other pretrial stipulations were similarly inessential and similarly left out of the judgment—without objection by either party.

Next, we observe that property classification was not raised as an issue by either party and was never the basis of any request for relief. Finally, the county has failed to cite any authority for the requirement that all pretrial stipulations be included in the

judgment and has also failed to allege any prejudice arising out of the omission.

We therefore are unconvinced that the trial court's unwillingness to include this portion of the pretrial statement in the final judgment constituted an abuse of discretion.

### V.

 Finally, the county argues that it is entitled to an award of its expert witness fees and double costs because it made an offer of judgment to the taxpayer pursuant to Rule 68, Arizona Rules of Civil Procedure. The offer listed each unit by parcel number and set forth an individual full cash value, classification, and the year or years to which the value and classification would apply. It further stated:

> The terms (full cash values and assessment ratios) of this Offer of Judgment are not divisible and may not be accepted in part or rejected in part. Plaintiff, Crystal Point Joint Venture, must accept the full cash value and assessment ratio for each and every property parcel listed in . . . in order for the Offer of Judgment to be binding upon Defendant, Maricopa County.

> This Offer of Judgment is further conditioned upon the requirement that the offer, if accepted by the Plaintiff, must be approved by the Maricopa County Board of Supervisors, and Defendant Arizona Department of Revenue and its counsel, the Attorney General of the State of Arizona.

Although the taxpayer did not accept the offer of judgment, the tax court denied the county's Rule 68 request. It did so properly.

The county's offer of judgment proposed settlement for aggregate full cash values of $9,666,100 for 1992 and $9,771,100 for 1993. The tax court's judgment adopted aggregate values of $11,801,888 for 1992 and $6,831,256 for 1993. The judgment thus favored the county by $2,135,788 for 1992, but favored the taxpayer by $2,939,844 for 1993. Accordingly, unless the taxpayer's combined tax rate for 1992 was at least 37.7% higher than its combined tax rate for 1993, an unlikely circumstance on which the record is silent, the ultimate judgment was not more favorable to the county than its offer. It therefore was not entitled to relief pursuant to Rule 68(d).

### VI.

The taxpayer requests the award of its attorneys' fees on appeal pursuant to A.R.S. section 12–348(B). In our discretion, we decline to do so.

### CONCLUSION

For the foregoing reasons, we affirm the tax court's judgment.

GARBARINO, P.J., and TOCI, J., concur.