88 P.3d 1165

**NORDSTROM, INC.,** a corporation; **Scottsdale Fashion Square Partnership,** a partnership, **Plaintiffs–Appellants, Cross–Appellees,**

v.

**MARICOPA COUNTY, Defendant–Appellee, Cross–Appellant.**

No. 1 CA–TX 02–0021.

Court of Appeals of Arizona, Division 1, Department T.

April 29, 2004.

Fennemore Craig, P.C. By Paul J. Mooney, Paul Moore, Phoenix, Attorneys for Plaintiffs–Appellants.

Helm & Kyle, Ltd. by Roberta S. Livesay, Tempe, Special Counsel for Defendant–Appellee.

## OPINION

GEMMILL, Judge.

¶ 1 Nordstrom, Inc. and Scottsdale Fashion Square Partnership ("SFSP") (collectively "Taxpayers") appeal the property tax valuations for the Nordstrom department store (the "Store") in Scottsdale Fashion Square for the 1999 and 2000 tax years. We hold that the Store is not a "shopping center" as defined in Arizona Revised Statutes ("A.R.S.") section 42–13201 (1999) for property tax valuation purposes. In addition, Maricopa County cross-appeals the omission of entrepreneurial profit from the tax court's calculation under the cost approach. We affirm the judgment of the Arizona Tax Court in its entirety.

## FACTS AND PROCEDURAL BACKGROUND

¶ 2 The Maricopa County Assessor valued parcel number 173–42–059L containing the Store [1] at a full cash value of $24,442,406 for the 1999 and 2000 tax years. SFSP holds title to the parcel and has a long-term lease

---

1. Unless the context requires otherwise, "Store" in this opinion refers to both the building and the parcel of land under the building.

with Nordstrom for the use of it. Nordstrom constructed the store building as an improvement to the parcel and owns the building. The parcel and building are valued as an economic unit for property tax purposes.

¶ 3 After appealing the valuations to the Board of Equalization, Taxpayers received a reduced valuation for the 2000 tax year of $21,632,324. Still unsatisfied, they filed notices of appeal and complaints with the Arizona Tax Court for each tax year, and the cases were consolidated.

¶ 4 Both sides hired appraisal experts to value the Store. The County hired Ralph J. Brekan, and Taxpayers hired Maxwell O. Ramsland.

¶ 5 Taxpayers advised the County that their expert, Ramsland, intended to use the straight-line building residual income valuation method under "A.R.S." § 42–13203(D) (the "statutory income approach"). Judge Jeffrey S. Cates, then presiding judge of the Arizona Tax Court, issued a discovery ruling limiting the documents that Taxpayers were obligated to produce to the County pertaining to valuation of the Store under the statutory income approach.

¶ 6 Brekan valued the Store under the cost approach and the sales comparison approach. Ramsland performed appraisals using these methods, as well as the income capitalization approach and the statutory income approach. Ramsland's recommended valuation of the Store was several million dollars below Brekan's valuation.

¶ 7 The County filed a motion in limine to exclude opinion testimony by Ramsland based on the statutory income approach. Judge Paul A. Katz, who succeeded Judge Cates as presiding judge of the Arizona Tax Court, granted the motion because he decided that Nordstrom did not meet the statutory definition of "shopping center" under A.R.S. § 42–13201 (1999).

¶ 8 Following an eleven-day bench trial, the tax court valued the Store at $22,406,040 for the 1999 tax year and at $22,206,040 for the 2000 tax year. The tax court ordered the County to pay Taxpayers $30,000 in attorneys' fees, $10,300 in expert witness fees, and $4,055.15 in taxable costs. This appeal and cross-appeal followed.

## THE APPEAL

### The Tax Court Correctly Concluded that the Statutory Income Approach Did Not Apply Because The Store Is Not a "Shopping Center"

■ ¶ 9 Arizona taxes property at full cash value. *Crystal Point Joint Venture v. Ariz. Dep't of Revenue*, 188 Ariz. 96, 101, 932 P.2d 1367, 1372 (App.1997) (quoting *Recreation Ctrs. of Sun City, Inc. v. Maricopa County*, 162 Ariz. 281, 289, 782 P.2d 1174, 1182 (1989)). Full cash value is determined by a statutory method of valuation or, if no statutory method is prescribed, by one of the standard appraisal methods. A.R.S. § 42–11001(5) (2002). A threshold issue in this appeal is whether the Store qualifies as a "shopping center" and must therefore be valued according to the statutory method prescribed for such properties. Our review is *de novo* when the interpretation and application of a statute controls the result. *Energy Squared Inc. v. Ariz. Dep't of Revenue*, 203 Ariz. 507, 509, ¶ 15, 56 P.3d 686, 688 (App. 2002).

■ ¶ 10 The relevant statute defines a "shopping center" as:

[A]n area that is comprised of three or more commercial establishments, the purpose of which is primarily retail sales, that has a combined gross leasable area of at least twenty-seven thousand square feet, that is owned or managed as a unit with at least one of the establishments having a gross leasable area of at least ten thousand square feet and that is either owner-occupied or subject to a lease that has a term of at least fifteen years.

A.R.S. § 42–13201. When determining the meaning of a statute, "[w]e look first to the plain language of the statute as the most reliable indicator of its meaning." *State v. Mitchell*, 204 Ariz. 216, 218, ¶ 12, 62 P.3d 616, 618 (App.2003) (citation omitted). "If the statute's language is clear and unambiguous, we give effect to that language and do not apply any other rule of statutory construction." *In re Maricopa County Superior*

*Court No. MH 2001–001139,* 203 Ariz. 351, 353, ¶ 12, 54 P.3d 380, 382 (App.2002). Because the Store is not "comprised of three or more commercial establishments," it does not satisfy this definition. The Store is a single commercial establishment attached to a shopping center. Based on the plain language of § 42–13201, the Store is not, in and of itself, a shopping center.

¶ 11 Notwithstanding the language of the statute, Taxpayers cite several sources of support for their argument that the Store qualifies as a shopping center: (1) the discovery ruling by Judge Cates; (2) the lease agreement between the Store and SFSP (the "Lease Agreement"); and (3) a recently-published opinion of the tax court, *The May Department Stores Co. v. Maricopa County,* 205 Ariz. 442, 72 P.3d 842 (Tax Ct.2003).[2] We are not persuaded, however, that Taxpayers' arguments overcome the plain language of § 42–13201.

■ ¶ 12 First, we do not agree that Judge Cates's pre-trial discovery ruling precluded Judge Katz's later ruling that the statutory income approach was inapplicable. Judge Cates did not make a final determination of the applicability of the statutory income approach.

¶ 13 Second, Taxpayers point to the Lease Agreement as evidence that the Store has the characteristics required for a shopping center designation. They argue that the contractual relationship between Nordstrom and the mall owner satisfies the guidelines for determining whether an area "is owned or managed as a unit" as set forth in the Arizona Department of Revenue Assessment Procedures Manual. The Lease Agreement provides for common advertising, operating hours, maintenance, and insurance, and also allocates responsibilities for maintenance and imposes various joint and reciprocal obligations. These provisions may support a conclusion that the Store is part of an area "that is owned or managed as a unit." The Lease Agreement, however, also states that SFSP "shall use its diligent efforts to have the Demised Land and the Tenant's Im-

provements, including Tenant's Building, separately assessed." The Store itself is not an "area" "comprised of three or more commercial establishments" and therefore does not satisfy the definition of a shopping center in § 42–13201. Although Taxpayers contend that the Store should be valued as a "shopping center" because it is part of an "area" that is a shopping center, we are unable to agree that the language of § 42–13201 permits the conclusion that the Store itself is a "shopping center."

■ ¶ 14 Finally, during oral argument Taxpayers urged us to follow the lead of the tax court in *The May Department Stores Co.* In that case Judge Katz ruled that the owners of anchor department stores in several malls were entitled to have their properties valued as "shopping centers" under § 42–13201. 205 Ariz. at 443–44, 72 P.3d at 843–44. To do otherwise, the court reasoned, would render the statute meaningless except when the mall owner contested a tax assessment on behalf of all the tenants and anchor store owners. *Id.* at 444, 72 P.3d at 844. Opinions of the tax court are due our respect, but we are not bound by the tax court's interpretation of a statute, *Circle K Stores, Inc. v. Apache County,* 199 Ariz. 402, 405, ¶ 7, 18 P.3d 713, 716 (App.2001), and we independently review the tax court's statutory interpretations. *Maricopa County v. Kinko's Inc.,* 203 Ariz. 496, 498, ¶ 4, 56 P.3d 70, 72 (App.2002). Although we acknowledge the concern expressed by the tax court in *The May Department Stores Co.,* we are nonetheless compelled to conclude that, under the plain language of § 42–13201, the Nordstrom Store does not constitute a "shopping center."

■ ¶ 15 The choice of appropriate statutory language rests with the legislature, and therefore, it is up to the legislature, if it so desires, to amend or clarify the meaning of § 42–13201. "[W]hen we allow ourselves to be guided by intuition that [the legislature] didn't really mean what it said, we are no longer interpreting laws, we are making

2. Taxpayers also cite *Mercantile Stores, Inc. v. Cochise County* (TX 1999–000411). Because *Mercantile Stores* is an unpublished decision of

the tax court, it is not precedent. Moreover, the parties here were not participants in that case. We therefore decline to address it.

them." *State v. Weinstein*, 182 Ariz. 564, 568, 898 P.2d 513, 517 (App.1991) (quoting *United States v. Phelps*, 895 F.2d 1281, 1283 (9th Cir.1990) (Kozinski, J., dissenting from the denial of rehearing en banc)). We have applied the language of the statute, as written, to the facts of this dispute.

### The Tax Court Permissibly Applied the Cost Approach for Appraising the Store

¶ 16 Because we agree with the tax court that the statutory income approach to valuation is not applicable, we must now review whether the tax court applied a correct appraisal technique. The available appraisal methods include the cost approach, the income approach, and the sales comparison approach, *see e.g., London Bridge Resort, Inc. v. Mohave County*, 200 Ariz. 462, 464, ¶ 6, 27 P.3d 819, 821 (App.2001), and must take current usage into account. A.R.S. § 42–11001(4).

¶ 17 Taxpayers argue that the tax court abused its discretion by choosing to apply the cost approach instead of the income approach. An abuse of discretion standard, however, is not the correct standard of review.

¶ 18 The determination whether the tax court applied the proper appraisal method necessarily depends upon a resolution of facts concerning the property. *See Maricopa County v. Sperry Rand Corp.*, 112 Ariz. 579, 581, 544 P.2d 1094, 1096 (1976). Findings of fact made pursuant to Rule 52(a) of the Arizona Rules of Civil Procedure will not be set aside on appeal unless they are clearly erroneous or not supported by substantial evidence. *See In re U.S. Currency in the Amount of $26,980.00*, 199 Ariz. 291, 295, ¶ 9, 18 P.3d 85, 89 (App.2000). Although neither party in this case requested findings of fact pursuant to Rule 52, the trial court nonetheless issued a detailed order stating certain factual findings. On appeal, we will not disturb *sua sponte* findings based on conflicting evidence "if there is reasonable evidence to support them." *United Leasing, Inc. v. Commonwealth Land Title Agency of Tucson, Inc.*, 134 Ariz. 385, 386–87, 656 P.2d 1246, 1247–48 (App.1982) (citing *Universal*

*Inv. Co. v. Sahara Motor Inn, Inc.*, 127 Ariz. 213, 619 P.2d 485 (App.1980)).

¶ 19 In support of its selection of an appraisal method, the tax court explained that the cost approach is "particularly useful in valuing new or nearly new improvements in properties that are not frequently exchanged in the market." The thesis of the cost approach is that "the market value of new construction may be represented by the sum of the land value and the cost of the improvements, each at its highest and best use." *The Appraisal of Real Estate* 355 (Appraisal Institute, 12th ed.2001). On this record, reasonable evidence exists to support the tax court's application of the cost approach.

¶ 20 The record also supports the conclusion that the factors needed to justify applying the income approach are missing here. The income approach assumes that the landlord will attempt to get the highest rent the market will allow, while tenants will attempt to obtain the most favorable rent and improvements. Here, SFSP representative David Scholl agreed that SFSP did not care about receiving any rental income from Nordstrom, and that the rent could have been zero and SFSP still would have wanted Nordstrom to come there. The County's expert, Brekan, testified that this was not a typical motivation for a landlord. He rejected the income approach, explaining: "If you just try to value the Nordstrom store as a stand-alone basis, that, itself, would indicate that that's not the proper approach, because that wasn't the motivation in building the store." Because the typical motivations were absent, the tax court reasonably concluded that the income approach would not yield a market value or form the basis for full cash value. *See Sperry Rand Corp.*, 112 Ariz. at 581, 544 P.2d at 1096 (stating that whether the trial court applied the proper method of appraisal necessarily depends upon a resolution of facts concerning the property and, based on the evidence in that case, the trial court's findings were not unreasonable).

¶ 21 Brekan further opined that the income approach could not apply because (1) the building improvements were devel-

oped for purposes other than economic rent, (2) the percentage of rent paid at the recently-constructed building did not justify construction, (3) the underlying Lease Agreement fragments the property rights, with leasehold improvements built to owner-user specifications, not to investor-tenant specifications, and (4) the building is an owner-use facility. The tax court, sitting as the trier of fact, was entitled to determine the credibility and weight to be given to the expert testimony presented by each side. *See State v. Bishop*, 162 Ariz. 103, 107, 781 P.2d 581, 585 (1989). The court reasonably agreed with Brekan's analysis.[3]

¶ 22 Taxpayers nevertheless contend that *Magna Investment & Development Corp. v. Pima County*, 128 Ariz. 291, 625 P.2d 354 (App.1981), supports using the income approach to appraise an anchor department store. Their reliance on this case is misplaced. In *Magna*, the parties agreed that the income approach applied and the court never analyzed the issue. *Id.* at 294, 625 P.2d at 357. Nor was there an indication that Levy's, the store at issue, was a newly built store or that it had the same stature as a Nordstrom store. Moreover, the opinion in *Magna* does not suggest that the usual motivations of landlord and tenant were absent.

¶ 23 Taxpayers further criticize the tax court's property valuation because it does not correlate with the Store's projected rent. According to Taxpayers, dividing the full cash value of $22,406,040 by the square footage of 226,205, then multiplying by a nine percent capitalization rate, yields a rental charge of $9 per square foot. They contend that this is an exorbitant rate that no department store would agree to pay. The problem with Taxpayers' argument is that the Store was not built to be leased to a third party, and Nordstrom and SFSP lacked the normal motivations. Taxpayers acknowledge that SFSP paid Nordstrom $10,000,000 to locate a store in the mall. Thus, Taxpayers' argument does not overcome the fact that sufficient evidence in the record supports the tax

court's decision that an income-production analysis is inapplicable under these circumstances.

¶ 24 Taxpayers also claim that the tax court abused its discretion by agreeing with Brekan's interpretation of market value. According to Taxpayers, Brekan analyzed the Store under a value in use analysis, and not under a market value analysis. Value in use is "the ability of an asset to produce revenue through ownership." *Glossary for Property Appraisal and Assessment* 153 (1997). Brekan testified on cross-examination that he did not apply this standard and instead used the market value standard. We will not substitute our judgment for that of the trier of fact on matters pertaining to the credibility and weight of expert testimony. *See State ex rel. Munoz v. Bravo*, 139 Ariz. 393, 396, 678 P.2d 974, 977 (App.1984); *In re U.S. Currency in the Amount of $315,900.00*, 183 Ariz. 208, 211, 902 P.2d 351, 354 (App.1995).

¶ 25 We also conclude that reasonable evidence in the record supports the tax court's determination of the full cash value for the property for each tax year.

### The Tax Court Permissibly Declined to Deduct Functional Obsolescence from its Calculation

¶ 26 Taxpayers additionally contend that the tax court abused its discretion by acknowledging the existence of functional obsolescence but failing to deduct the $5,580,000 value attributed to functional obsolescence by their expert, Ramsland. We disagree.

¶ 27 Obsolescence, a form of depreciation, is defined as a loss of value and is classified as either functional or economic. *Inland Steel Co. v. State Bd. of Tax Comm'rs*, 739 N.E.2d 201, 210 (Ind. Tax Ct.2000) (citations omitted). Functional obsolescence is either "a physical element that buyers are unwilling to pay for or a deficiency that impairs the utility of property when

---

3. Taxpayers attempt to discredit Brekan because he did not perform an appraisal using the income approach. But there is no requirement that an expert utilize an appraisal method that he does not believe should be used for a particular

property. *Cf. United Calif. Bank v. Prudential Ins. Co.*, 140 Ariz. 238, 300, 681 P.2d 390, 452 (App.1983) (upholding the admissibility of appraisal expert's testimony using the market and income approaches but not the cost approach).

compared to a more modern replacement, leading to a loss in value." *Id.*

■ ¶ 28 Taxpayers argue, with support from Ramsland, that the value of the Store should be reduced because of its functional obsolescence consisting of its superlative trade-dress and super-adequacy. The tax court, however, was entitled to accept the testimony of Brekan that there was no functional obsolescence to be deducted from the value under the analysis applied in this instance. *See Bishop,* 162 Ariz. at 107, 781 P.2d at 585. Brekan explained that he used replacement cost appraisal figures from Marshall & Swift valuation services for Class A department stores and that this database of information applies to generic department stores and thus eliminates functional obsolescence as a factor. The tax court commented on Taxpayers' position regarding functional obsolescence but did not make a specific finding of functional obsolescence that needed to be subtracted from the valuation of the property. Reasonable evidence in the record supports the tax court's decision to not deduct for functional obsolescence.

### The Tax Court Did Not Err by Capping the Attorneys' Fees and Expert Witness Expense Awards

■ ¶ 29 Finally, Taxpayers challenge the tax court's decision to cap attorneys' fees at $30,000 and to limit expert witness fees to the rate charged by the County's main expert, Brekan. We review disputes regarding the amount of fees awarded under an abuse of discretion standard. *See Associated Indem. Corp. v. Warner,* 143 Ariz. 567, 571, 694 P.2d 1181, 1185 (1985). Questions of statutory interpretation are reviewed *de novo. Open Primary Elections Now v. Bayless,* 193 Ariz. 43, 46, ¶ 9, 969 P.2d 649, 652 (1998).

¶ 30 According to A.R.S. § 12–348(B)(1) (Supp.2002):

B. In addition to any costs which are awarded as prescribed by statute, a court may award fees and other expenses to any party, other than this state or a city, town or county, which prevails by an adjudication on the merits in an action brought by the party against this state or a city, town or county challenging:

1. The assessment or collection of taxes or in an action brought by this state or a city, town or county against the party to enforce the assessment or collection of taxes.

Also, § 12–348(E)(5) provides that "an award of fees against the state or a city, town or county shall not exceed thirty thousand dollars for fees incurred at each level of judicial appeal."

■ ¶ 31 Taxpayers contend that they are each entitled to recover separate awards of fees, each subject to a separate $30,000 cap. But we conclude that the statutory language does not mandate a separate $30,000 cap in this case because the parcel and building are valued as one economic unit for property tax purposes and both taxpayers were represented by the same law firm presenting a unified claim.

¶ 32 The language of § 12–348 does not suggest to us that the legislature intended, under these facts, to vary the amount awarded based on the number of plaintiffs or defendants. In *SMP II Limited Partnership v. Arizona Department of Revenue,* we rejected an analogous taxpayer argument when § 12–348 capped fees at $20,000. 188 Ariz. 320, 327, 935 P.2d 898, 905 (App.1996). As we pointed out, the statute's statement of legislative purpose explained that it was intended "to reduce the deterrents and disparity [between citizens and the government] by entitling prevailing parties to recover *an award* of reasonable attorney fees, expert witness fees and other costs against the state." *Id.* (citing 1981 Ariz. Sess. Laws Ch. 208, § 1 (emphasis added)). Reading subsections (B) and (E)(5) together with the legislative purpose, we concluded that the legislature did not contemplate "that a prevailing party could take advantage of the fortuitous circumstance of multiple defendants to receive multiple awards." *Id.*[4] We find no

---

4. Since our decision in *SMP II Limited Partnership,* the legislature amended A.R.S. § 12–348(E) to state that attorneys' fees "shall not exceed thirty thousand dollars for fees incurred at each level of judicial appeal," changing earlier lan-

abuse of discretion in the tax court's decision to cap attorneys' fees at $30,000 for both Taxpayers in this dispute.

■ ¶ 33 Nor are we persuaded by Taxpayers' argument that they are entitled to recover fees for each tax year. The statute allows fees to parties that prevail "by an adjudication on the merits *in an action.*" (Emphasis added.) Here, the claims for both tax years were brought in one consolidated action and Taxpayers raised many of the same issues regarding each contested year. The effort expended for the 2000 tax year consisted of updates to their appeal for the 1999 tax year. We find no abuse of discretion in the tax court's application of the $30,000 cap to the consolidated action.[5]

¶ 34 With respect to the cap on expert witness fees, A.R.S. § 12–348(E)(1) provides: "An expert is not eligible for compensation at a rate in excess of the highest rate of compensation for experts paid by this state or a city, town or county." In this case, the County's primary expert, Brekan, charged a flat fee for the appraisal and an hourly rate of $150 for consultation, deposition, and trial testimony. Dr. Gunterman, who testified as a rebuttal witness for the county, received $200 per hour. Taxpayers argue that they are entitled to reimbursement for the time incurred by their expert, Ramsland, at Gunterman's rate of $200 per hour.

■ ¶ 35 We agree that § 12–341(E)(1) sets an upper limit in this dispute of $200 per hour, not $150 per hour, for Taxpayers' expert witness fees. The statute caps the rate at the highest rate charged by the government's experts, and does not distinguish between the government's main expert and a rebuttal expert. The statute does not, however, compel the tax court to compensate Ramsland at the $200 rate. Rather, it provides that Ramsland is "eligible for compensation" at a rate up to $200 per hour. The tax court was in the best position to assess

the reasonableness of Ramsland's fee. We find no abuse of discretion in its choice of rate and we therefore affirm the award. *See Warner,* 143 Ariz. at 571, 694 P.2d at 1185 (applying abuse of discretion standard for dispute on amount of fees).

## THE CROSS–APPEAL

¶ 36 The County cross-appeals the tax court's decision to omit entrepreneurial profit[6] in applying the cost approach to the Store. The tax court reasoned:

> Since this is an owner-built, owner-occupied property, which was not built for investment purposes, the calculation of entrepreneurial profit is speculative. Entrepreneurial profit will not be realized until the property is sold which is highly unlikely in light of the bifurcated ownership of the entire property and Nordstrom's long-term lease.

■ ¶ 37 As Taxpayers point out, excluding entrepreneurial profit from the valuation is consistent with the County's advocacy of the cost approach. The County contended that the cost approach was the best valuation method because the Store was not built for investment purposes. In support of its argument for inclusion of entrepreneurial profit, the County now contends that this factor must be included when (1) the property in question is of a type that is developed to make a profit as a direct consequence of development and (2) there is some evidence that the market price will bear inclusion of such profit. Reasonable evidence in the record supports the tax court's determination that the first factor does not exist here. The record also supports the tax court's determination that the realization of entrepreneurial profit on the Store would be speculative. We therefore affirm the tax court's decision to omit entrepreneurial profit.

guage that fees "shall not exceed twenty thousand dollars."

5. Our analysis of this issue obviates the need to address the County's alternative argument that Taxpayers did not prevail on their appeal for the year 2000.

6. "Entrepreneurial profit" is defined as "the difference between the total cost of a property and its market value, which represents the entrepreneur's compensation for the risk and expertise associated with the development." The Appraisal of Real Estate, 360 (Appraisal Institute, 12th ed.2001).

## CONCLUSION

¶ 38 We affirm the judgment of the tax court in all respects. In addition, we will consider an award of attorneys' fees to Taxpayers for fees incurred solely in responding to the cross-appeal, subject to the $30,000 statutory limit and conditioned upon their compliance with Rule 21(c), Arizona Rules of Civil Appellate Procedure.

CONCURRING: JON W. THOMPSON, Presiding Judge and LAWRENCE F. WINTHROP, Judge.