FILED BY CLERK

AUG 23 2011

COURT OF APPEALS
DIVISION TWO

IN THE COURT OF APPEALS
STATE OF ARIZONA
DIVISION TWO

| | | |
|---|---|---|
| IB PROPERTY HOLDINGS, LLC, a Delaware limited liability company, | ) ) ) | 2 CA-CV 2011-0030 DEPARTMENT A |
| Plaintiff/Appellee, | ) ) | O P I N I O N |
| v. | ) ) | |
| RANCHO DEL MAR APARTMENTS LIMITED PARTNERSHIP, an Arizona limited partnership; and M.P.I. GENERAL II, INC., an Arizona corporation, | ) ) ) ) ) ) ) | |
| Defendants/Appellants. | ) ) ) | |

APPEAL FROM THE SUPERIOR COURT OF PIMA COUNTY

Cause No. C20106836

Honorable Ted B. Borek, Judge

AFFIRMED

Gust Rosenfeld P.L.C.
  By Matthew D. Bedwell                                                                 Phoenix
                                                    Attorneys for Plaintiff/Appellee


Sherman & Howard L.L.C.
  By David A. Weatherwax and Dewain D. Fox                                    Phoenix
                                                Attorneys for Defendants/Appellants

B R A M M E R, Judge.

¶1 Rancho Del Mar Apartments Limited Partnership (Rancho) and M.P.I. General II, Inc. (MPI) (collectively referred to herein as Rancho) appeal from the trial court's order granting a preliminary injunction against it in favor of IB Property Holdings, LLC (IB) and the court's denial of Rancho's motion to dissolve the injunction. Rancho argues the court erred by applying the wrong standard when determining whether to issue the preliminary injunction, by finding IB would suffer irreparable harm if the injunction was not granted, and by finding IB had a strong likelihood of success at trial. We affirm.

### Factual and Procedural Background

¶2 We view the facts in the light most favorable to upholding the trial court's ruling. *Smith v. Beesley*, 226 Ariz. 313, ¶ 3, 247 P.3d 548, 551 (App. 2011). This case involves a dispute about an easement among owners of a three-phase apartment complex. David Case and Mark Breen own equal shares of MPI. MPI is the operating general partner of Rancho, which owns Phase I of the complex. IB took title to Phase II following a trustee sale after Phase II's previous owner, Del Moral Limited Partnership (Del Moral), which Case owned in part, defaulted on loan obligations it had secured with a deed of trust on Phase II. Las Montañas Village Limited Partnership, also affiliated with Case, owns Phase III. Prior to Del Moral's default, all three phases of the apartment complex were treated as a single entity operating under shared use agreements.

2

¶3     In 1991, Rancho granted an easement to Del Moral's predecessor, Resolution Trust Corporation (RTC).[1] Case and Breen were involved in negotiating and executing the easement.[2] Del Moral paid for the construction of a security gate at the main Campbell Avenue entrance to the project and also constructed a gate across the easement, obstructing access to Bilby Road. The Bilby Road gate remained locked from its construction until IB opened it after it took title to Phase II. Rancho relocked the gate, and IB reopened it. After IB opened the gate for a second time, Rancho closed the gate again and constructed a fence completely blocking access to Bilby Road.

¶4     IB filed a complaint seeking injunctive relief and damages after Rancho built the fence, accompanied by a motion for a temporary restraining order to enjoin Rancho from blocking the easement. The parties stipulated to vacating the temporary restraining order hearing and agreed to an evidentiary hearing on IB's request for a preliminary injunction. At the conclusion of the hearing, the trial court granted the preliminary injunction. Rancho then filed a motion for reconsideration limited to the issue of irreparable harm and requesting in the alternative a stay pending appeal, which

---

[1] The easement states:

> Grantor hereby grants and conveys to Grantee and its successors and assigns a[] pedestrian and passenger vehicle easement over entranceways and vehicle driveways located on Phase I . . . as they may exist from time to time, for the purposes of providing pedestrian ingress and egress and passenger vehicle ingress and egress to and from Phase II-III, all as hereinafter limited.

[2] The easement was amended in 1993 and 1995 in ways not material to our analysis.

3

the court denied. The court signed an amended order granting the preliminary injunction. Rancho filed a motion to dissolve the preliminary injunction pursuant to Rule 65(c), Ariz. R. Civ. P., which the court denied. This appeal followed. We have jurisdiction pursuant to A.R.S. § 12-2101(A)(5)(b).

## Discussion

**¶5** "Granting or denying a preliminary injunction is within the sound discretion of the trial court, and its decision will not be reversed absent an abuse of that discretion." *Valley Med. Specialists v. Farber*, 194 Ariz. 363, ¶ 9, 982 P.2d 1277, 1280 (1999). We defer to the court's factual findings unless clearly erroneous, but review its legal conclusions de novo. *Flying Diamond Airpark, LLC v. Meienberg*, 215 Ariz. 44, ¶ 9, 156 P.3d 1149, 1152 (App. 2007).

### The *Shoen* Standard for Preliminary Injunctive Relief

**¶6** Rancho argues the trial court erred when it utilized the standard for granting preliminary injunctive relief established by Division One of this court in *Shoen v. Shoen*, 167 Ariz. 58, 63, 804 P.2d 787, 792 (App. 1990). The court in *Shoen* adopted a Ninth Circuit standard the United States Supreme Court subsequently overturned in *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 20-21 (2008), and Rancho urges us to follow the more stringent standard *Winter* announced. As a preliminary matter, although the court in *Shoen* cited both federal and state law as authority for the standard it ultimately adopted, it did not suggest Arizona either should or would follow federal rather than state precedent as that law developed. 167 Ariz. at 63, 804 P.2d at 792. To the extent Rancho suggests we should do so now, we decline the invitation.

4

¶7 Although Rancho contends Arizona courts "have long followed the same standard" as federal courts when considering whether to issue preliminary injunctions, it offers no authority supporting its suggestion that we should reject Arizona's established standard in the face of the developed conflicting federal law. Our supreme court adopted the *Shoen* standard in *Smith v. Arizona Citizens Clean Elections Commission*, 212 Ariz. 407, ¶ 10, 132 P.3d 1187, 1190-91 (2006), as have we, *see Kromko v. City of Tucson*, 202 Ariz. 499, ¶ 3, 47 P.3d 1137, 1139 (App. 2002), and we are bound to follow decisions of our supreme court, *Green v. Lisa Frank, Inc.*, 221 Ariz. 138, ¶ 13, 211 P.3d 16, 23 (App. 2009). Our court of appeals has continued to employ the *Shoen* standard since *Winter* was decided. *See Ariz. Ass'n of Providers for Persons with Disabilities v. State*, 223 Ariz. 6, ¶ 12, 219 P.3d 216, 222 (App. 2009); *see also White v. Greater Ariz. Bicycling Ass'n*, 216 Ariz. 133, ¶ 14, 163 P.3d 1083, 1087-88 (App. 2007) (we consider decisions of coordinate courts highly persuasive and binding). The *Shoen* standard thus remains the law in Arizona, and the trial court did not err in applying it here.

¶8 Additionally, the distinction Rancho urges here does not affect the outcome in this case. The relevant difference between the *Winter* and *Shoen* standards is that *Winter* requires the party seeking an injunction to demonstrate that irreparable injury is likely, rather than merely possible. *See Winter*, 555 U.S. at 22. Here, although Rancho argues the trial court found irreparable harm was only "possible," in its final amended order granting the injunction the court indeed found "[IB] will suffer irreparable injury if an injunction is not granted." A finding that irreparable injury will occur plainly satisfies a requirement that irreparable injury be likely.

5

**Evidence of Irreparable Harm**

**¶9**        Rancho argues the trial court erred in granting, and then failing to dissolve, the preliminary injunction because IB had failed to show a likelihood of irreparable harm. The party seeking a preliminary injunction must establish:

> 1) A strong likelihood that he will succeed at trial on the merits;
>
> 2) The possibility of irreparable injury to him not remediable by damages if the requested relief is not granted;
>
> 3) A balance of hardships favors himself; and
>
> 4) Public policy favors the injunction.

*Shoen*, 167 Ariz. at 63, 804 P.2d at 792.  The court found as to factors (3) and (4) "the harm to [IB] if the injunction is not granted outweighs the harm to [Rancho] if the injunction is granted" and "public policy favors enforcement of the easement contract"; Rancho does not challenge those findings on appeal.  The court also found:

> [IB] will suffer irreparable injury if an injunction is not granted because the lack of access to Bilby will reduce occupancy of [IB]'s property, cause loss of income and loss of value of the property at a time when [IB] is seeking buyers for the property, and the amount of loss will be difficult to measure with reasonable certainty.

Rancho contends this finding was not supported by the evidence because IB's alleged injury "is remediable by damages" and monetary damages are adequate as a matter of law.

**¶10**        As *Shoen* provides, the party seeking an injunction must show a possibility of irreparable injury "not remediable by damages."   167 Ariz. at 63, 804 P.2d at 792.

Monetary damages may provide an adequate remedy at law. *See Cracchiolo v. State*, 135 Ariz. 243, 247, 660 P.2d 494, 498 (App. 1983). However, where a loss is uncertain, monetary damages may be inadequate.[3] *See Phoenix Orthopaedic Surgeons, Ltd. v. Peairs*, 164 Ariz. 54, 59, 790 P.2d 752, 757 (App. 1989), *overruled on other grounds by Farber*, 194 Ariz. 363, 982 P.2d 1277. To determine whether damages would be an adequate remedy at law, the court should consider "the difficulty of proving damages with reasonable certainty." Restatement (Second) of Contracts § 360 (1981); *see also* Restatement § 352 (damages not recoverable for loss beyond amount established with reasonable certainty); Restatement § 360 cmt. b (damages inadequate remedy if injured party can prove some but not all loss); *Haralson v. Fisher Surveying, Inc.*, 201 Ariz. 1, ¶ 35, 31 P.3d 114, 121 (2001) (McGregor, J., concurring in part and dissenting in part) (Arizona courts generally apply law of the Restatement absent Arizona law to contrary).

¶11        Rancho argues IB's injury is remediable by damages because its complaint alleged it had suffered monetary damages "in an amount to be proven at trial" and did not allege that the full amount of its damages would be difficult to calculate.[4] However, even

---

[3]Rancho cites out-of-state cases to argue purely economic injuries are inappropriate for injunctive relief. However, it cites no binding authority in support of its position, and we find none.

[4]Rancho also notes IB's motion for a temporary restraining order did not allege IB was unable to quantify its damages. To the extent Rancho argues IB waived this argument below or on appeal by not raising it properly in the trial court, we disagree; IB raised the issue in its reply below, the parties addressed it at the hearing without objection, and the court had an opportunity to address the issue on its merits. *See Airfreight Express Ltd. v. Evergreen Air Ctr., Inc.*, 215 Ariz. 103, ¶ 17, 158 P.3d 232, 238-39 (App. 2007); *see also* Ariz. R. Civ. P. 15(b) (issues tried by implied consent of parties treated as raised in pleadings).

if some damages may be proved and recovered, injunctive relief may be appropriate if those damages are inadequate to address the full harm suffered. *See Peairs*, 164 Ariz. at 59, 790 P.2d at 757.

¶12 Rancho also challenges the trial court's implicit conclusion that potential monetary damages would be too uncertain to compensate IB adequately. IB's real estate broker, Arthur Wadlund, testified the value of the property would increase if access to and from Phase II was made available to Bilby Road because it would improve the access for Phase II's prospective tenants.[5] Equitable relief may be appropriate to prevent a loss of potential customers. *See*, *e.g.*, Restatement (Second) of Contracts § 360 cmt. b (breach of covenant not to compete causes "the loss of customers of an unascertainable number"); Restatement (Second) of Torts § 944 (1979) cmt. d (estimate of business diverted via unfair competition "necessarily contains a high degree of conjecture").

¶13 Rancho suggests Wadlund's testimony implied it would be "possible" to calculate IB's alleged damages, but he had not attempted to do so. To the contrary, Wadlund testified there was "probably a way to estimate" the harm, but that "[i]t would be pretty speculative to figure out." Whether Wadlund had attempted to calculate such an estimate is irrelevant to his opinion that any results would have been speculative. "We will not substitute our judgment for that of the trier of fact on matters pertaining to the

---

[5]Rancho contends IB has not suffered any injury from lack of access to Bilby Road because it successfully has attracted potential purchasers, and any occupancy problems were caused by poor management, not by the Bilby gate. But it fails to explain how either of these facts, even were they established as true, would eliminate any additional harm IB has suffered or will suffer as a result of its lack of access to Bilby Road.

credibility and weight of expert testimony." *Nordstrom, Inc. v. Maricopa County*, 207 Ariz. 553, ¶ 24, 88 P.3d 1165, 1171 (App. 2004); *see also* Ariz. R. Civ. P. 52(a) (we give due regard to trial court's opportunity to judge witness credibility). The trial court's finding that IB would suffer irreparable injury if an injunction was not granted was supported by the evidence and was not "clearly erroneous."[6] *See Farber*, 194 Ariz. 363, ¶ 9, 982 P.2d at 1280.

¶14 Rancho further contends IB suffered no harm from the Bilby gate because there is access to Phase II via a southern entrance from Campbell Avenue that does not lead traffic through Rancho's property. Rancho does not allege Wadlund was unaware of this entrance; in fact, he acknowledged there was access to the property from Campbell Avenue.[7] Nonetheless, he opined that being able to access Phase II from Bilby Road would increase its value. Neither does Rancho contest that Phase II does not abut Campbell Avenue. And testimony from other witnesses revealed the southern entrance from Campbell Avenue leads traffic through a small residential street unsuitable for access to a large apartment complex. Therefore, the trial court's determination that IB would be harmed by the lack of access from Bilby Road, regardless of access from

---

[6]Rancho also challenges the testimony of other witnesses regarding the effect of the gate on the value of the property. Because we already have determined sufficient evidence supports the trial court's finding of irreparable harm, we do not reach this argument.

[7]Rancho also alleges Wadlund previously stated in an email that Campbell Avenue was preferable to Bilby Road for leasing purposes. However, the email's next sentence makes clear Wadlund was discussing preferred access for the entire complex—not only for Phase II. He states, "That being said, one option to a new buyer is to divorce themselves from phases [I] and [III] and run a stand alone property."

9

Campbell Avenue, is supported by the evidence.[8]  *See Nordstrom, Inc.*, 207 Ariz. 553, ¶ 24, 88 P.3d at 1171.

**Likelihood of Success on the Merits**

**¶15**          Rancho also argues the trial court erred in concluding IB had a strong likelihood of success on the merits because the court incorrectly determined parol evidence of the parties' intent as to the scope of the easement was inadmissible.  It insists the parties intended the easement would be limited to emergency vehicle use only.  Rancho also argues the court erred by ignoring evidence the easement had been modified or terminated by abandonment, waiver, and estoppel.

*Parol Evidence*

**¶16**          Principles of contract interpretation apply to easements.  *See, e.g.*, *State v. Mabery Ranch, Co.*, 216 Ariz. 233, ¶ 28, 165 P.3d 211, 219 (App. 2007) (applying rules of contract interpretation to easement agreement).  The parol evidence rule prohibits the admission of extrinsic evidence to vary or contradict the terms of a contract, although such evidence is admissible to interpret them.  *Taylor v. State Farm Mut. Auto. Ins. Co.*, 175 Ariz. 148, 152, 854 P.2d 1134, 1138 (1993).  A court must consider the evidence, but need admit it only when the contract language is "reasonably susceptible" to the interpretation offered by the proponent, and then only to determine the parties' intended meaning.  *Id.* at 154, 854 P.2d at 1140.  "When 'the provisions of the contract are plain

---

[8]Rancho also challenges the trial court's statement, made at the hearing on the motion to dissolve, that Phase II is unique property.  We do not address this issue because the court's determination that IB would suffer irreparable harm is supported by other evidence.

10

and unambiguous upon their face, they must be applied as written, and the court will not pervert or do violence to the language used, or expand it beyond its plain and ordinary meaning or add something to the contract which the parties have not put there.'" *Employers Mut. Cas. Co. v. DGG & CAR, Inc.*, 218 Ariz. 262, ¶ 24, 183 P.3d 513, 518 (2008), *quoting D.M.A.F.B. Fed. Credit Union v. Employers Mut. Liab. Ins. Co. of Wis.*, 96 Ariz. 399, 403, 396 P.2d 20, 23 (1964).

¶17        The easement states:

> Grantor hereby grants and conveys to Grantee and its successors and assigns a[] pedestrian and passenger vehicle easement over entranceways and vehicle driveways located on Phase I . . . as they may exist from time to time, for the purposes of providing pedestrian ingress and egress and passenger vehicle ingress and egress to and from Phase II-III, all as hereinafter limited.

Rancho notes the easement also declares "[i]t is the intention of the parties that they grant each other reciprocal easements for the sole purpose of limited ingress and egress upon the terms, provisions, conditions, and covenants contained in th[e] agreement." This provision, Rancho contends, clearly indicates the scope of the easement is reasonably susceptible to the interpretation it offers because the easement was intended to be "limited," and that limitation was for emergency vehicle access only.

¶18        Rancho points to evidence in the record that it asserts demonstrates the true intent of the parties. In their affidavits, Case and Breen declared that when the easement was granted the parties intended that, if an access point was constructed from the complex to Bilby Road, access would be blocked by a locked gate and be limited to emergency vehicle use only. They also noted that if Bilby Road had been intended to

11

provide access to and from Phase II, there would have been no reason for the easement providing access to Campbell Avenue. Breen further stated that in his discussions with RTC he made it "absolutely clear" that, for safety and security reasons, if Rancho was to provide the easement it would require the right to control access over Phase I so there would never be public access from the complex onto Bilby Road; he stated RTC understood and accepted that limitation.

¶19 Additionally, Case and Breen declared that when Del Moral acquired Phase II it understood and agreed access to Bilby Road was limited to emergency vehicles. They also stated Del Moral had constructed the security gate to limit access to emergency vehicles only, and the gate had been locked as soon as it was constructed and had remained locked. Further, they averred that when Phase II was constructed, although Del Moral had moved several roads, the map to the easement had not been changed; Del Moral had not built a road on the northern portion of the easement, instead constructing a maintenance building there. Rancho and Del Moral also had agreed public access to the complex would be through a security gate on Campbell Avenue built by Del Moral. Last, Case declared that when Del Moral refinanced Phase II he told a bank representative the gate was locked permanently, used only for emergency vehicles, and gave the representative a copy of the residential lease then in effect, which stated the gate was considered to be access for emergency vehicles.

¶20 The parol evidence rule renders inadmissible the evidence Rancho offers because it is offered solely to vary or contradict the plain meaning of the easement, not to interpret one of its terms. *See Taylor*, 175 Ariz. at 152, 854 P.2d at 1138. The proffered

12

evidence merely seeks to supplant the terms "pedestrian" and "passenger vehicle" with the term "emergency vehicle." Although we first must consider Case and Breen's affidavits and their "allegations made . . . as to the appropriate interpretation of the [easement] in light of the extrinsic evidence" offered, we also must consider the language of the writing to determine if it is reasonably susceptible to the suggested interpretation. *Long v. City of Glendale*, 208 Ariz. 319, ¶ 28, 93 P.3d 519, 528 (App. 2004). The only argument Rancho offers indicating the easement's language suggests it is reasonably susceptible to another meaning is the provision of the easement stating it is for "limited ingress and egress." However, the limitation referred to is clear—the easement is limited by "the terms, provisions, conditions, and covenants contained in th[e] agreement," none of which limit the easement to emergency vehicle use only. And Rancho has offered no explanation why a reciprocal easement that permitted access to emergency vehicles only would have been either necessary or desired by RTC.

¶21 Here, no interpretation of the easement is required because the meaning of its terms is clear. Even in light of the evidence Rancho proffered, the contract language is not "reasonably susceptible" to the interpretation it offered. Thus the evidence cannot be admitted to determine the parties' intended meaning. *See id.* ¶ 29. Moreover, "one cannot claim that one is 'interpreting' a written clause with extrinsic evidence if the resulting 'interpretation' unavoidably changes the meaning of the writing." *Id.* ¶ 34. And although Rancho contends the trial court "could not resist the temptation to interpret the language in the Easement according to how it understood the words," the words "pedestrian" and "passenger vehicle" require no interpretation. "At what point [the

13

court] stops 'listening to testimony that white is black and that a dollar is fifty cents is a matter for sound judicial discretion and common sense.'" *Taylor*, 175 Ariz. at 153, 854 P.2d at 1139, *quoting* 6 Arthur L. Corbin, *Corbin on Contracts* § 579, at 127 (interim ed. 2002). Therefore, the court did not err in refusing to admit the proffered extrinsic evidence and in concluding the parties "would be bound by the written agreement."

### *Abandonment, Waiver, Estoppel*

¶22 Rancho also argues the trial court erred in determining there was a strong likelihood IB would succeed on the merits because the court failed to consider "substantial evidence of abandonment, waiver and estoppel." Although the court's ruling did not address those arguments explicitly, it stated it had "considered everything," including the arguments made by counsel, and we will uphold the court's ruling if any construction of the evidence supports it. *See Spaulding v. Pouliot*, 218 Ariz. 196, ¶ 8, 181 P.3d 243, 246 (App. 2008).

¶23 "The law is well-settled that the owner of an easement created by express grant is under no duty to make use of the easement in order to retain his entitlement." *Squaw Peak Cmty. Covenant Church of Phoenix v. Anozira Dev., Inc.*, 149 Ariz. 409, 414, 719 P.2d 295, 300 (App. 1986). Abandonment of an easement requires the intent to abandon coupled with an act or a failure to act that carries out the intent to abandon. *City of Tucson v. Koerber*, 82 Ariz. 347, 356, 313 P.2d 411, 418 (1957). And waiver is the "voluntary and intentional relinquishment of a known right" or conduct warranting an inference that such a right has been relinquished. *Id.* Abandonment and waiver both "require the concurrence of act and intent." *Id.* "Estoppel arises where one with

14

knowledge of the facts has acted in a particular manner so that he ought not to be allowed to assert a position inconsistent with his former acts to the prejudice of others who have relied thereon." *Id.*

¶24 Rancho notes Del Moral constructed the gate prohibiting public access to Bilby Road. Additionally, the gate was locked as soon as it was constructed and remained locked. And Del Moral constructed a maintenance building on the original easement and funded the Campbell Avenue security gate providing the only public access to the complex. Rancho alleges it relied on those actions of Del Moral because it would not have allowed changes to the development plan or the construction of the maintenance building, and would not have entered into a shared use agreement with Del Moral had Del Moral not agreed the gate would remain locked permanently. At the hearing, Rancho's counsel clarified that its allegation was that the easement had been abandoned only as to public access from Bilby Road.

¶25 On the record before us, the evidence adequately supports the trial court's ruling. The court could have found IB's predecessor did not intend to abandon or waive its rights permanently to public access over its easement when it installed a gate that could be unlocked and opened. *See* Restatement (Third) of Property (Servitudes) § 7.4 cmts. a, c (2000) ("abandonment is difficult to establish" and, if servitude benefit substantially enhances dominant estate's value, abandonment "should never be found in the absence of unequivocal evidence that the beneficiary intended to extinguish it permanently"); *see also Squaw Peak*, 149 Ariz. at 414, 719 P.2d at 300 (gate does not restrict passage in manner of permanent structure because it "may be opened or closed").

15

And subsequent non-use is not enough for a finding of abandonment or waiver. *See Squaw Peak*, 149 Ariz. at 414, 719 P.2d at 300. Similarly, we are not persuaded that IB's predecessors "acted in a particular manner so that [IB] ought not to be allowed to assert a position inconsistent with . . . former acts to the prejudice of others who have relied thereon." *Koerber*, 82 Ariz. at 356, 313 P.2d at 418. Detrimental reliance requires more than Rancho's assertions that it would have done some things differently had it known Del Moral or its successors would attempt to enforce the easement as written. *See LaBombard v. Samaritan Health Sys.*, 195 Ariz. 543, ¶ 12, 991 P.2d 246, 250 (App. 1998) (claim for estoppel requires detrimental reliance which requires showing of injury or prejudice because action taken in reliance). Therefore, because Rancho has not established the easement was terminated or modified, and because the extrinsic evidence it offers is inadmissible under the parol evidence rule, the trial court did not err in determining IB had a strong likelihood of success on the merits of its claim.

**Disposition**

¶26       For the foregoing reasons, we affirm.


/s/ *J. William Brammer, Jr.*
J. WILLIAM BRAMMER, JR., Judge

CONCURRING:

/s/ *Peter J. Eckerstrom*
PETER J. ECKERSTROM, Presiding Judge

/s/ *Joseph W. Howard*
JOSEPH W. HOWARD, Chief Judge

16