NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

MARK GANLEY, an individual, *Plaintiff/Appellant*,

*v.*

DEPENDABLE MEDICAL TRANSPORT SERVICES, LLC, an Arizona
limited liability company, *Defendant/Appellee*.

No. 1 CA-CV 14-0255
FILED 7-02-2015

Appeal from the Superior Court in Maricopa County
No. CV2011-018678
The Honorable Randall H. Warner, Judge

**AFFIRMED**

COUNSEL

Spiess & Bell, Phoenix
By James O. Bell
*Counsel for Plaintiff/Appellant*

Milligan Lawless, P.C., Phoenix
By James Burr Shields, Emily D. Armstrong
*Counsel for Defendant/Appellee*

---

**MEMORANDUM DECISION**

Presiding Judge Randall M. Howe delivered the decision of the Court, in which Judge Andrew W. Gould and Judge Peter B. Swann joined.

---

**H O W E**, Judge:

¶1          Mark Ganley appeals the trial court's order granting summary judgment in favor of Dependable Medical Transport Services, LLC, ("DMTS") and awarding DMTS attorney's fees. For the following reasons, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶2          In July 2007, Ganley was a director of DMTS. Due to the company's financial difficulties, Ganley in his individual capacity lent DMTS $125,000. Ganley and DMTS executed a promissory note, which provided that DMTS would repay Ganley in 36 installments beginning in August 2007. Around the same time, DMTS took two loans from the Biltmore Bank of Arizona. Ganley signed the loan agreements and their corresponding promissory notes in his capacity as a director of DMTS.

¶3          Ganley, DMTS, and Biltmore Bank also entered into subordination agreements—both before and after executing the promissory notes—in which they agreed to subordinate DMTS's indebtedness to Ganley to DMTS's indebtedness to Biltmore Bank. According to the agreements, the "subordinated indebtedness" included "all present and future indebtedness, obligations, liability, claims, rights, and demands of any kind which may be now or hereafter owning from" DMTS to Ganley. The "superior indebtedness" included "all present and future indebtedness, obligations, liabilities, claims, rights, and demands of and kind which may be now or hereafter owning from" DMTS to Biltmore Bank. The agreements provided that all "Subordinated Indebtedness of [DMTS] to [Ganley] is and shall be subordinated in all respects to all Superior Indebtedness of [DMTS] to [Biltmore Bank]" and that Ganley would not accept any payments on the subordinated indebtedness "at any time while any Superior Indebtedness is owning to [Biltmore Bank]." Ganley signed the agreements in his capacities as a director of DMTS and as an individual creditor.

2

¶4        Beginning August 2007, under the promissory note between DMTS and Ganley, DMTS made four payments to Ganley. But DMTS was still indebted to Biltmore Bank. In November 2007, because DMTS was still experiencing financial difficulties, Richard Ganley and Bill Gibbs each lent DMTS $105,000 ("the emergency loans"). Mark Ganley agreed that DMTS would repay the emergency loans before repaying his promissory note. After DMTS entered into the contracts for the emergency loans, it stopped making payments to Ganley on his promissory note because of the board members' agreement that DMTS was to repay the emergency loans first.

¶5        After unsuccessful attempts to recover on his promissory note, Ganley sued DMTS for breach of contract. DMTS counterclaimed for fraud and conspiracy to commit fraud. DMTS then moved for summary judgment on both Ganley's claim and DMTS's counterclaims. The trial court granted summary judgment in DMTS's favor on Ganley's claim. It awarded DMTS attorney's fees incurred while defending against Ganley's claim, but did not award fees for pursuing DMTS's counterclaims. The court also dismissed DMTS's counterclaims without prejudice.

¶6        Ganley filed a notice of appeal prematurely. We stayed the appeal for the trial court to enter a final judgment pursuant to Arizona Rule of Civil Procedure 54(c). When the trial court did so, the appeal was reinstated.

## DISCUSSION

¶7        Ganley argues that the trial court erred because issues of material fact precluded summary judgment in favor of DMTS. Summary judgment may be granted when no genuine issue of any material fact exists, and the moving party is entitled to judgment as a matter of law. Ariz. R. Civ. P. 56(c)(1). "We review the grant of summary judgment de novo to determine whether any genuine issue of material fact exists, and we view the evidence and all reasonable inferences in favor of the non-moving party." *Russell Piccoli P.L.C. v. O'Donnell*, 237 Ariz. 43, 46–47, 344 P.3d 345, 348–49 (App. 2015). Summary judgment should be granted "if the facts produced in support of [a] claim . . . have so little probative value, given the quantum of evidence required, that reasonable people could not agree with the conclusion advanced by the proponent of the claim. . . ." *Orme Sch. v. Reeves*, 166 Ariz. 301, 309, 802 P.2d 1000, 1008 (1990).

¶8        Further, "when a party moves for summary judgment with supporting affidavits containing sworn facts on material issues, it is incumbent upon the [opposing] party to contradict the facts in a positive

manner with sworn proof." *Kiser v. A. J. Bayless Markets, Inc.*, 9 Ariz. App. 103, 106, 449 P.2d 637, 640 (1969). The opposing party may not rely on allegations or denials of its own pleadings; it must come forward with specific facts showing a genuine issue for trial. Ariz. R. Civ. P. 56(e). If the opposing party does not so respond, summary judgment, if appropriate, shall be entered against that party. *Id.* Because no genuine issue of any material facts exists, as discussed below, we affirm the trial court's order.

## 1. The Subordination Agreements

**¶9**     Ganley argues that regardless of the subordination agreements' language, the parties intended at the time they entered into the agreements that DMTS could make payments to satisfy its salary and debt obligations if DMTS was in compliance with its covenants with Biltmore Bank. But this argument fails because the subordination agreements' language plainly and unambiguously state the parties' intended meaning. Both agreements provide that all of DMTS's indebtedness to Ganley was subordinated in all respects to DMTS's indebtedness to Biltmore Bank. They state that subordinated indebtedness include all present and future indebtedness from DMTS to Ganley and superior indebtedness include all present and future indebtedness from DMTS to Biltmore Bank. The agreements also provide that Ganley may not accept any payments on his subordinated indebtedness at any time while any superior indebtedness is owed to Biltmore Bank. When the provisions of a contract are plain and unambiguous, they must be applied as written. *IB Prop. Holdings, LLC v. Rancho Del Mar Apartments Ltd. P'ship*, 228 Ariz. 61, 66–67 ¶ 16, 263 P.3d 69, 74–75 (App. 2011) (internal quotation marks and citation omitted). "[T]he court will not pervert or do violence to the language used, or expand it beyond its plain and ordinary meaning or add something to the contract which the parties have not put there." *Id.* Thus, because the record shows that DMTS was still indebted to Biltmore Bank, pursuant to the subordination agreements, DMTS could not pay and Ganley could not accept payments on DMTS's debt to Ganley.

**¶10**     Ganley counters the agreements' language with extrinsic evidence indicating that: (1) a Biltmore Bank representative stated to Ganley that the "[i]nvestor loans may only be repaid when all loan covenants in Biltmore's indentures are satisfied" and (2) DMTS made four payments on Ganley's note, made payments on the emergency loans, and paid salaries to himself and his brother, Richard. But because Ganley's evidence contradicts the agreements, the parole evidence rule prohibits the admission of such evidence. *See Taylor v. State Farm Mut. Auto. Ins. Co.*, 175 Ariz. 148, 152, 854 P.2d 1134, 1138 (1993) (providing that the parole evidence

rule prohibits the admission of extrinsic evidence to vary or contradict the terms of a contract). Further, those events could not be used to ascertain the parties' intended meaning at the time the contract was made because they occurred after the contract was made. *See id.* at 153, 854 P.2d at 1139 (providing that in interpreting a contract, we must "attempt to ascertain and give effect to the intention of the parties at the time the contract was made if at all possible").

¶11      In any event, contrary to Ganley's argument, the bank representative's statement was consistent with the subordination agreements in that DMTS could not pay and Ganley could not accept payment on his promissory note if DMTS still owed Biltmore Bank money. Moreover, although DMTS made loan payments and paid salaries, nothing in the record shows that Biltmore Bank approved of those actions or that it waived its rights to enforce the subordination agreements. Consequently, because the language of the subordination agreements provide that DMTS could not pay and Ganley could not accept payments on DMTS's debt to Ganley so long as DMTS owed Biltmore Bank money, the trial court did not err in granting DMTS summary judgment.

## 2. Attorney's Fees

¶12      Ganley next argues that the trial court erred in awarding DMTS attorney's fees pursuant to A.R.S. § 12–341.01(A), which provides that in "any contested action arising out of a contract, express or implied, the court may award the successful party reasonable attorney fees." Although the promissory note provides that Ganley may recover attorney's fees in attempting to collect on the note, the note is silent on whether DMTS is entitled to recover its attorney's fees from Ganley. Arizona law provides that when a contract has a unilateral provision permitting one party to recover attorney's fees under certain circumstances, the other party may recover its fees pursuant to A.R.S. § 12–341.01. *Pioneer Roofing Co. v. Mardian Constr. Co.*, 152 Ariz. 455, 471, 733 P.2d 652, 668 (App. 1986). Here, the note has a unilateral provision permitting Ganley to recover attorney's fees. Accordingly, DMTS, as the successful party on Ganley's contract claim, was entitled to its fees pursuant to A.R.S. § 12–341.01(A). Consequently, the trial court did not err in awarding DMTS attorney's fees.

**CONCLUSION**

¶13   For the foregoing reasons, we affirm.



Ruth A. Willingham · Clerk of the Court
FILED: ama