NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS

## DIVISION ONE

———————————————

KENNETH IVEY AND CYNTHIA IVEY, husband and wife; KENNETH
R. IVY and CYNTHIA C. IVEY as Trustees of The Ivey Family Living
Trust dated July 23, 2008, *Plaintiffs/Appellants*,

*v.*

CAPTIVA INVESTMENTS III, LLC, an Arizona limited liability company;
PHILLIP L. STEWART and KATHLEEN STEWART, Trustees of the
Phillip and Kathleen Stewart Revocable Trust, *Defendants/Appellees*.

No. 1 CA-CV 23-0636
FILED 07-11-2024

———————————————

Appeal from the Superior Court in Yavapai County
Nos. P1300CV201801126, P1300CV201901051, P1300CV202000967
The Honorable John David Napper, Judge

——————— **AFFIRMED** ———————

COUNSEL

J. Jeffrey Coughlin, PLLC, Prescott
By J. Jeffrey Coughlin
*Counsel for Plaintiffs/Appellants*

Robert C. Kozak, PLLC, Prescott
By Robert C. Kozak
*Co-Counsel for Defendant/Appellee Captiva Investments III, LLC*

Pietragallo Gordon Alfano Bosick & Raspanti, LLP, Pittsburgh, PA
By William Pietragallo II, Michael O. Bethune
*Co-Counsel for Defendant/Appellee Captiva Investments III, LLC*

Musgrove Drutz Kack & Gautreaux, PC, Prescott
By Mark W. Drutz, Jeffrey Gautreaux
*Counsel for Defendants/Appellees Phillip Stewart, Kathleen Stewart, Phillip and Kathleen Steward Revocable Trust*

---

## MEMORANDUM DECISION

Judge David D. Weinzweig delivered the decision of the Court, in which Presiding Judge Andrew M. Jacobs and Judge Jennifer M. Perkins joined.

---

**W E I N Z W E I G**, Judge:

¶1        Kenneth and Cynthia Ivey (collectively, "Iveys") appeal the superior court's judgment as a matter of law ("JMOL") in favor of Captiva Investments ("Captiva") and Phillip and Kathleen Stewart (collectively, "Stewarts"). Because we find no error, we affirm.

### FACTS AND PROCEDURAL HISTORY

¶2        The Iveys and the Stewarts own individual lots in Prescott Vistas, a planned community. The Iveys own Lot 2. The Stewarts own Lot 1, which is adjacent to Lot 2. Captiva first owned Lot 1, but later sold it to the Stewarts. For reference, here is a screenshot of the recorded Plat, pulled from the record:



¶3         Both lots are governed by a Declarations of Covenants, Conditions and Restrictions ("CC&Rs") and a recorded Plat. The CC&Rs reserve a homeowner's right to create "a common driveway located wholly or partially upon an adjacent property." Section 8.2 grants a nonexclusive easement to owners using a common driveway "for free and unrestricted pedestrian and vehicular access to [their] property." Section 8.3 then explains that driveway easements "shall be maintained in suitable condition for passenger car travel and shall have dust free, hard surfaces."

¶4         As shown above, the southern stem of Lot 2 is crosshatched to reflect a driveway easement for ingress and egress in favor of Lot 1 and Lot 3. The recorded Plat directs the owners of Lot 1 and Lot 2 to jointly maintain the driveway easement area. Before this lawsuit, that easement was paved and bordered with gravel.

¶5         Captiva built a garage on Lot 1 facing the easement and began construction of a paved driveway to connect the garage and driveway easement. At one point, Captiva's driveway crossed the gravel strip, so some gravel and mesh had to be removed.

¶6         The Iveys saw the construction and objected to Captiva's installation of pavers. They also requested that Captiva replace the rock and mesh. Captiva continued with construction. The Iveys sued in superior court to block Captiva from building the driveway. The Iveys first requested a temporary restraining order on the construction of the driveway. After a hearing, that request was denied.

¶7         The Iveys raised seven claims in all against both Captiva and the Stewarts, including for (1) conversion of the removed gravel; (2) declaratory relief that the easement is only to be used for ingress and egress, and not for parking; (3) injunctive relief ordering Captiva/the Stewarts to remove the pavers, restore the gravel and stop parking on the easement; (4) nuisance based on the pavers; (5) breach of good faith and fair dealing; (6) breach of contract based on the pavers violating the CC&Rs; and (7) trespass based on the pavers.

¶8         The case proceeded to a jury trial. By the end of the second day, Iveys' counsel had called all but one witness: Kenneth Ivey. Kenneth Ivey appeared in court that day, but the superior court sent him home for being sick. His symptoms worsened, and he believed he had Covid. At that point, the superior court granted a mistrial based on Kenneth Ivey's illness.

¶9 To avoid subjecting Captiva and the Stewarts to a second jury trial, the superior court severed the injunctive claim and ordered Kenneth Ivey to testify at a bench trial once he recovered. That way, the court could rule from the bench. The court also ordered the Iveys to introduce all evidence related to the jury-eligible claims in his testimony. After Kenneth Ivey's testimony, both parties moved for JMOL.

¶10 The superior court granted partial relief to both parties. It sided with the Iveys on two of the seven claims, enjoining the Stewarts from parking on the easement and ordering Captiva to pay for the conversion of gravel. The court found for Captiva and the Stewarts on all other claims and granted them attorney's fees. The Iveys timely appealed. We have jurisdiction. *See* A.R.S. § 12-2101(A)(1).

## DISCUSSION

¶11 The Iveys argue the superior court erred (1) by proceeding as a bench trial after declaring a mistrial in the jury trial, (2) by finding that the easement was a driveway easement and granting judgment to Captiva and the Stewarts, and (3) by awarding attorney fees to Captiva and the Stewarts. We address each argument in turn.

## I. Procedural Error

¶12 The Iveys argue the superior court erred when it declared a mistrial in the jury trial and proceeded as a bench trial. We review a mistrial ruling for an abuse of discretion, *see Gray v. Gardiner*, 92 Ariz. 208, 210 (1962), but we review de novo the application of court rules, *Haroutunian v. Valueoptions, Inc.*, 218 Ariz. 541, 549, ¶ 22 (App. 2008).

¶13 The Iveys contend the mistrial immediately voided the trial, so the superior court had no authority to convert the jury trial into a bench trial, and that they were denied due process because they were not fully heard before the court entered JMOL.

¶14 We agree with the Iveys on both counts. First, the superior court should not have continued the trial after declaring a mistrial. After declaring a mistrial, "the right to a *new* trial necessarily follows, as a mistrial is equivalent to no trial." *Gray*, 92 Ariz. at 211 (emphasis added). Second, Arizona Rule of Civil Procedure 50(a) requires that a party be "fully heard on an issue during a jury trial" before JMOL is entered against that party. Here, Kenneth Ivey was present but unable to testify at trial before the court entered JMOL. His later testimony in the bench trial is not sufficient.

**¶15**     That being said, we cannot reverse based on a technical error when no prejudice results from that error. *See* Ariz. Const. art. VI, § 27 ("No cause shall be reversed for technical error in pleadings or proceedings when upon the whole case it shall appear that substantial justice has been done."); *see also Creach v. Angulo*, 189 Ariz. 212, 214 (1997) ("To justify the reversal of a case, there must not only be error, but the error must have been prejudicial to the substantial rights of the party.").

**¶16**     Neither error prejudiced the Iveys here. The court declared the mistrial to accommodate Kenneth Ivey's illness and ultimately decided all jury-eligible claims on JMOL. Indeed, the Iveys' attorney admitted as much when questioned by the court:

> THE COURT: So, I ask it again, if I had granted the Motion for a Directed Verdict a couple of Tuesdays ago, the case would never have gone to the jury; correct?
>
> MR. COUGHLIN: Correct.
>
> THE COURT: What's the difference?
>
> MR. COUGHLIN: There is none.
>
> THE COURT: Okay. So then what's the harm in proceeding in the way that I am proposing?
>
> MR. COUGHLIN: There is none.

**¶17**     Likewise, there was no prejudice when Kenneth Ivey did not testify at the jury trial. He later testified to the bench. So although Kenneth Ivey was not "fully heard" during the jury section of the trial, his case was presented in full before the judge who ultimately ruled on the issues as a matter of law. We will not reverse a case based on a technical error that prejudiced no one. *See Creach*, 189 Ariz. at 214–15.

**¶18**     Finally, the Iveys are estopped from asserting harm on appeal, even if there was prejudice. Judicial estoppel prevents a party from taking an inconsistent position in successive actions. *State v. Towery*, 186 Ariz. 168, 182 (1996). The Iveys did not object to the proposed procedure at trial, and they admitted there was no harm, so they are estopped from taking a contrary position on appeal.

## II.     Substantive Error

**¶19**          The Iveys next argue that the superior court erred by granting JMOL to the Stewarts and Captiva.  We review that issue de novo, viewing the facts and all reasonable inferences in the light most favorable to the nonmoving party. *Warner v. Sw. Desert Images, LLC*, 218 Ariz. 121, 130–31, ¶ 25 (App. 2008).  JMOL "should be granted only if the facts presented in support of a claim have so little probative value that reasonable people could not find for the claimant." *Johnson v. Pankratz*, 196 Ariz. 621, 623, ¶ 4 (App. 2000).

**¶20**          This appeal turns on two contracts: the CC&Rs and the recorded Plat. *See Powell v. Washburn*, 211 Ariz. 553, 555, ¶ 8 (2006) ("A deed containing a restrictive covenant that runs with the land is a contract.")  We review the interpretation of contracts de novo as a question of law. *Andrews v. Blake*, 205 Ariz. 236, 240, ¶ 12 (2003).  Principles of contract interpretation apply to easements. *IB Prop. Holdings, LLC v. Rancho Del Mar Apartments Ltd. P'ship*, 228 Ariz. 61, 66, ¶ 16 (App. 2011).  We construe a contract to determine and enforce the parties' intent. *Taylor v. State Farm Mut. Auto. Ins. Co.*, 175 Ariz. 148, 152 (1993).  In doing so, we consider the plain meaning of the words. *United Cal. Bank v. Prudential Ins. Co. of Am.*, 140 Ariz. 238, 259 (App. 1983).  We do not construe terms "in a way that renders another meaningless." *ELM Retirement Center, LP v. Callaway*, 226 Ariz. 287, 291, ¶ 18 (App. 2010).  We read separate parts of the contract together when possible to harmonize the overall document. *Id.*

**¶21**          The Iveys make two arguments.  They contend the cross-hatched section of the recorded Plat is not a driveway easement, and the pavers are a "structure" in violation of the CC&Rs.

### A.     Driveway Easement

**¶22**          The Iveys first argue the crosshatch is not a driveway easement because Lot 1 is not landlocked.  They offer no authority for the argument, however, that driveway easements are permissible only if one plot is landlocked.  Nothing in the CC&Rs or recorded Plat supports this argument.  The Iveys do not even account for the other crosshatches on the recorded Plat, which create driveway easements for lots that are not landlocked (Lots 6 and 7).

**¶23**          The Iveys next argue the crosshatches cannot be a driveway easement because they do not extend onto Lot 1.  They offer no authority for this argument.  Moreover, section 8.2 of the CC&Rs envisions and describes a driveway easement located entirely on one property.

¶24 The recorded Plat and text of the CC&Rs show that the Iveys' easement is a driveway easement. The Plat even labels the cross-hatched section as an easement for ingress and egress in favor of Lot 2. And the cross-hatched section matches section 8.2's definition of a common driveway, so we interpret the cross-hatched section as a common driveway.

### B. Pavers

¶25 The Iveys next argue that Captiva built a "structure" in violation of the CC&Rs when Captiva installed pavers on the driveway easement. We disagree. Section 4.19 prohibits the excavation and placement of a "structure" on an easement.

¶26 The pavers are not a "structure" under section 4.19. Pavers do not resemble any "Permanent Structure[s]" identified in section 4.13— "garage, trailer, mobile home, motor home, motor vehicle, or any temporary structure of any nature may be used temporarily or permanently as a residence on any Lot." These examples are concerned with residential structures. Each structure extends above the ground; pavers lie flat on the ground's surface. And the CC&Rs' plain terms authorize pavers because they represent a "dust free, hard surface[]."

## III. Attorney's fees

¶27 The Iveys contend the superior court erred in awarding attorney's fees to the Stewarts and Captiva under A.R.S. § 12-341.01(A). Attorney's fees are properly awarded under § 12-341.01(A) to successful parties in claims arising out of a contract. Because no one disputes this claim arose out of a contract, the superior court did not err in awarding fees to the Stewarts and Captiva.

¶28 The Iveys requested fees and costs on appeal in a supplemental brief that contained no legal authorities. Captiva and the Stewarts moved to strike the supplemental brief as improper. We grant the motions to strike because an award of costs and fees must be requested in the opening brief, *see* ARCAP 21(a)(1), and supplemental citations are not for new arguments, *see* ARCAP 17.

**CONCLUSION**

¶29          We affirm.



AMY M. WOOD • Clerk of the Court
FILED:     AGFV