NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

ORTHODONTIC PARTNERS, LLC, et al., *Plaintiffs/Appellants*,

*v.*

TREVOR NICHOLS, et al., *Defendants/Appellees*.

No. 1 CA-CV 24-0701

FILED 12-03-2025

Appeal from the Superior Court in Maricopa County
No. CV2024-002585
The Honorable Erik Thorson, Judge

**AFFIRMED**

COUNSEL

Dorsey & Whitney LLP, Phoenix
By Gregory B. Collins, Brittany M. Gilbertson, Seth T. Goertz
*Counsel for Plaintiffs/Appellants*

Davis Miles, PLLC, Phoenix
By Bradley D. Weech, Marshall R. Hunt
*Counsel for Defendants/Appellees*

## MEMORANDUM DECISION

Judge Anni Hill Foster delivered the decision of the Court, in which Presiding Judge James B. Morse Jr. and Judge Veronika Fabian joined.

F O S T E R, Judge:

¶1        Plaintiffs, Orthodontic Partners, LLC ("OP") and OP Orthodontics of Arizona, PLLC ("OP AZ") doing business as Frost Orthodontics ("Frost Ortho") and orthodontist Dr. Stuart Frost, sought a preliminary injunction against former employee, Dr. Trevor Nichols. Plaintiffs attempted to enforce restrictions on Nichols' subsequent employment, practice of dentistry, solicitation of clients and employment of staff in his Employment Agreement ("Agreement"). The superior court denied the injunction. Plaintiffs appeal the denial. For the following reasons, this Court affirms.

### FACTS AND PROCEDURAL HISTORY

¶2        Frost hired Nichols to work as an associate orthodontist at his practice. Frost required Nichols to sign an initial agreement as part of his onboarding process in 2019. That 2019 agreement outlined a potential partnership between Frost and Nichols, beginning six months after Nichols started working at Frost Ortho. But that partnership never materialized.

¶3        Frost sold his practice to OP, an Orthodontic Services Organization managing practices across the country, while Nichols was still employed at Frost Ortho. OP established OP AZ, while continuing to allow Frost to do business as Frost Ortho. Nichols and Frost worked together under the newly formed practice. As part of the sale, Nichols signed the Agreement with OP AZ which contained three restrictive covenants applicable in the "Designated Territory": (1) non-competition, (2) non-solicitation of employees and (3) non-solicitation of clients (collectively the "Restrictive Covenants").

¶4        The Agreement defined "Designated Territory" as

> a 25-mile radius around each of the orthodontic and dentistry offices and facilities located in the United States that are now or in the future, owned, operated, or managed by any of the

2

Companies or any of their affiliates, including any orthodontic and dentistry offices with which any of the Companies were actively contemplating a business relationship during Orthodontist's employment with the Practice and of which Orthodontist had knowledge.

¶5 About a year and a half after the establishment of OP AZ, it named Nichols Co-Clinical Director of OP AZ. But in September 2023, Frost terminated Nichols for "failing to meet clinical day requirements," "failing to follow protocols and meet expectations associated with patient care" and "breach of trust via disclosing confidential information regarding OP AZ." Frost notified Nichols orally of the termination and then in writing following the verbal discussion.

¶6 After his termination from OP AZ, Nichols joined Somos Dental & Orthodontics, located in the Phoenix metropolitan area. While working at Somos, Nichols began advertising for his new practice, Nichols Orthodontics and Aesthetics, PLLC, on social media. Nichols hired a chief of operations who was previously employed by OP AZ.

¶7 Plaintiffs filed suit against Nichols alleging various claims and sought (1) a temporary restraining order regarding Plaintiffs' trade secret information; (2) a preliminary injunction to bar Nichols from soliciting their employees and patients; and (3) to prevent Nichols from opening Nichols Ortho. Following a three-day evidentiary hearing, the court denied Plaintiff's application for a preliminary injunction finding that Plaintiffs failed to establish the factors necessary for a preliminary injunction. Among other things, the court stated that "Plaintiffs failed to meet their burden to show a . . . strong likelihood of success on the merits including enforcement of the restrictive covenants" and that "Plaintiffs did not meet their burden to show irreparable harm if the injunction were denied."

¶8 Plaintiffs appealed. This Court has jurisdiction. A.R.S. §§ 12-2101(A)(5)(b) and -120.21(A)(3).

## DISCUSSION

¶9 Plaintiffs raise the following issues on appeal: (1) whether the superior court appropriately interpreted the Federal Trade Commission's ("FTC") non-compete rule; (2) whether non-competes incident to the sale of a business are enforceable; (3) whether public policy disfavoring non-competes for physicians apply to orthodontists; (4) whether the superior court erred in determining that the restrictive covenants in this case were

3

unenforceable due to an earlier breach; and (5) whether the superior court erred in its reliance on an unreported case related to patent law in finding irreparable harm cannot be presumed.

**¶10** When the underlying order from the superior court is a denial of a preliminary injunction, this Court reviews it for an abuse of discretion. *Fann v. State*, 251 Ariz. 425, 432, ¶ 15 (2021). This Court will not reverse the superior court's findings absent "a mistake of law" or clear error in determining the facts to the legal standard. *Shoen v. Shoen*, 167 Ariz. 58, 62–63 (App. 1990); *see id.*

## I.      The superior court did not err in denying the application for preliminary injunction.

**¶11** To obtain a preliminary injunction, a party must demonstrate (1) "a strong likelihood of success on the merits," (2) a "possibility of irreparable harm if the relief is not granted," (3) that the balance of hardships weighs in the party's favor and (4) that public policy "favors granting the injunctive relief." *Fann*, 251 Ariz. at 432, ¶ 16. Because irreparable harm is dispositive, this Court addresses it first. *Id.*

**¶12** The Agreement provides:

> Equitable Remedies. Each of the Parties hereto acknowledges and agrees that upon any breach by the other Party of its obligations under this Agreement, the aggrieved Party will have no adequate remedy at law, and accordingly will be entitled to specific performance and other appropriate injunctive and equitable relief, in addition to any other legal rights or remedies available.

Plaintiffs argue that given this boilerplate provision, Arizona law allowed the superior court to presume irreparable harm. Plaintiffs also argue that a breach of restrictive covenants can constitute irreparable harm due to the "intangible and difficult to quantify" nature of the injury and that the court erred by relying on *Symbiont Nutrition, LLC v. BJM Feed Ingredients, LLC*, 1 CA-CV 21-0218, 2022 WL 1580462, at *5, ¶ 24 (Ariz. App. May 19, 2022) (mem. decision), which held that irreparable harm cannot be presumed.

**¶13** Irreparable harm is harm not remediable by damages. *See City of Flagstaff v. Ariz. Dep't of Admin.*, 255 Ariz. 7, 13, ¶ 18 (App. 2023) (quoting *Shoen*, 167 Ariz. at 63) ("Injunctive relief is available only when the injury is not remediable by damages.") (cleaned up). Whether damages serve as an adequate remedy is determined by the complexity of "proving damages

with reasonable certainty." *IB Prop. Holdings, LLC v. Rancho Del Mar. Apartments Ltd. P'Ship*, 228 Ariz. 61, 65, ¶ 10 (App. 2011) (citation omitted). If damages cannot be proven with reasonable certainty, the harm may be irreparable. *See id.* A request for a preliminary injunction requires a showing of irreparable harm, not a presumption. *Fann*, 251 Ariz. at 432, ¶ 16.

**¶14** Here, the court found that "Arizona law . . . does not presume irreparable harm[] to determine whether to issue injunctive relief." In making that finding, it cited *Symbiont,* an unpublished case that addressed an injunction in a patent-infringement case. *Symbiont*, 2022 WL 1580462, at *5, ¶ 24. In that case, this Court discussed the difference between the federal standard and Arizona's standard in presuming irreparable harm. *Id.* The *Symbiont* court reaffirmed *Fann's* holding that irreparable harm is not presumed in Arizona. *Id.* The court's citation of *Symbiont* as persuasive authority was not error. Instead, the court found that Plaintiffs relied on contractual recitations of irreparable harm rather than proving a "risk of actual harm." A court cannot presume irreparable harm based on boilerplate language in the contract.

**¶15** Plaintiffs next contend "uncontroverted evidence of irreparable harm" exists. Plaintiffs' evidence includes (1) that "OP would lose business and OP would suffer a significant administrative burden"; (2) that Nichols chose a practice within the Designated Territory; and (3) that "OP will lose (and likely has already lost) business and with it, goodwill." But the evidence Plaintiffs presented at the hearing does not support their claim of irreparable harm.

**¶16** Frost testified that Frost Ortho had recently hired a replacement for Nichols. Additionally, Frost explained that he held no patent or trademark for his "Frost Smile" technique and lectured other dentists about how to do it. As a result, other dentists would be able to provide those services under their own branding, negating his claims about competition and loss of business. Frost's testimony indicated a lack of secrecy in his methods, further negating his allegations of disclosure of trade secret information. Finally, there was no evidence establishing that Nichols solicited employees or clients. Consequently, Plaintiffs did not provide substantial evidence to support irreparable harm. *See ArborCraft LLC v. Ariz. Urban Arborist*, No. 1 CA-CV 23-0384, 2024 WL 6439844, at *5, ¶ 29 (Ariz. App. Oct. 3, 2023) (mem. decision) (plaintiff provided substantial evidence of irreparable injury when it presented that its proprietary customer list was central to its business and that disclosure had already caused customer loss). With this evidence, the court found that the vague

testimony Frost provided regarding financial hardship, "if it were proven, would be remediable by money damages" and thus were not irreparable. *See IB Prop. Holdings, LLC*, 228 Ariz. at 65, ¶ 10.

**¶17** Despite Plaintiffs' disagreement with the superior court's assessment, this Court does "not reweigh the evidence or reassess credibility issues." *Williams v. King*, 248 Ariz. 311, 317, ¶ 26 (App. 2020), *as amended* (Jan. 29, 2020). This Court discerns no error in the superior court finding a lack of irreparable harm.

**¶18** Because Plaintiffs' showing of irreparable harm is dispositive, this Court need not address whether Plaintiffs are likely to succeed on the merits. The record supports the court's findings and denial of the preliminary injunction.

## II. Attorneys' fees.

**¶19** Nichols requests his attorneys' fees and costs on appeal under Arizona Rule of Civil Appellate Procedure 21 and A.R.S. § 12-341.01. As the prevailing party on appeal and because this action arises out of a contract, Nichols is awarded his attorneys' fees and costs. *See* Ariz. R. Civ. App. P. 21, A.R.S. § 12-341.01.

## CONCLUSION

**¶20** This Court affirms.



MATTHEW J. MARTIN • Clerk of the Court
**FILED**:    JR